*Supp. 11 Opinion
MARSHALL, J.
Appellant was convicted in Los Angeles Municipal Court for violations of subdivision h of section 2 of Los Angeles City Ordinance No. 95789 (count I) and section 602.4 of the Penal Code (count II).
As to count II, the city attorney notes that section 602.4 of the Penal Code[1] deals with an airport located in a county other than that of its owner-county and that such section is inapplicable to the subject airport. We treat such statement as a concession of reversibility of count II and discuss hereafter count I. The ordinance (count I) declares that, “No person shall engage in any business or commercial activity on the [Los Angeles International] Airport, without first having obtained the proper lease or permit therefor from the Board [of Airport Commissioners].” Appellant was charged under this ordinance, with the sale of a newspaper called “The Militant” on the sidewalk in front of one of the airline terminals, without having obtained a permit. The only “business and commercial activity” proved under count I consisted of the sale of copies of “The Militant,” a newspaper. Appellant did not speak to any drivers of automobiles. Appellant did not enter the terminal building, or speak to the skycaps who were handling baggage. There was no evidence of any disruption of any airport activity. Appellant had not disrupted pedestrian or vehicular traffic.
Los Angeles International Airport, including the sidewalk in question, is located on land owned by the City of Los Angeles. The airport is administered by the airport department of the city. The airport is open to the public. Approximately 23'A million passengers per year go through the airport.
The board of airport commissioners (hereinafter Board), to whom appellant would have had to apply for a permit, granted Host Interna *Supp. 12 tional Inc. (hereinafter Host) an exclusive license to sell newspapers at the airport. During the term of such license, no one else can procure such a permit from the Board. Thus, even if appellant had sought a permit from the Board, it would have been denied him. The sole criterion used to determine which newspaper is to.be sold by Host is profit to Host.
Appellant contends that the ordinance and statute under which he was convicted should not be deemed to regulate the sale of newspapers at the airport because such activity is protected by the First Amendment of the United States Constitution concerning freedom of speech and the press. He argues that the ordinance is not narrowly drawn to provide for a minimum of regulation of activity by the First Amendment, as is constitutionally required. We agree.
While it is true that a “purely commercial” distribution of literature, such as commercial advertising, may be subject to broad governmental regulation (see Valentine v. Chrestensen (1942) 316 U.S. 52 [86 L.Ed. 1262, 62 S.Ct. 920]), the courts have held that the fact that a paper is sold, and not distributed free of charge does not so imbue it with “commercial” characteristics as to deprive it of the protection of the First Amendment (made applicable to the states through the due process clause of the Fourteenth Amendment). The First Amendment guarantee of freedom of the press includes circulation and distribution (see Lovell v. Griffin (1938) 303 U.S. 444 at p. 452 [82 L.Ed. 949, 58 S.Ct. 666]), and despite the fact that the sale of periodicals does introduce a “commercial feature,” the fact that money is .made “does not put them [the publications] beyond the protection of the First Amendment.” (Breard v. Alexandria (1951) 341 U.S. 622 at p. 642 [95 L.Ed. 1233, 71 S.Ct. 920, 35 A.L.R.2d 335].)
It is true that the Los Angeles City Charter gives the Board broad latitude to enter into leases, and to grant licenses and permits. When, however, as here, a First Amendment dimension is introduced, the precedents clearly indicate that ordinances governing licenses and permits in the First Amendment area will be subject to strict scrutiny as distinguished from the regulation of ordinary commercial enterprise: “A number of decisions illustrate the general thesis that a local ordinance restricting the sale or distribution of printed matter will survive First Amendment challenge only if it serves a legitimate end and is narrowly drawn to achieve that end.” (Young v. Municipal Court (1971) 16 Cal.App.3d 766 at p., 769 [94 Cal.Rptr. 331]. See also Sunset Amusement Co. v. Board of Police Commissioners (1972) 7 Cal.3d 64 [101 Cal.Rptr. *Supp. 13 768, 496 P.2d 840]; Burton v. Municipal Court (1968) 68 Cal.2d 684 [68 Cal.Rptr. 721; 441 P.2d 281]; Perrine v. Municipal Court (1971) 5 Cal.3d 656 [97 Cal.Rptr. 320, 488 P.2d 648]; Dillon v. Municipal Court (1971) 4 Cal.3d 860 [94 Cal.Rptr. 777, 484 P.2d 945].)
Respondent has not expressly prohibited the sale of any newspapers at the airport, but it has, in effect, by giving Host an exclusive license to sell, bestowed upon Host totally unrestrained discretion as to which papers shall be sold at the airport. The record indicates no provision by respondent of express standards by which Host was to be guided. Such broad and unrestrained power does not meet the requirements of the First Amendment. A licensing ordinance may regulate the sales or distribution of newspapers by narrowly drawn guidelines. (Young v. Municipal Court, supra, 16 Cal.App.3d 766 at p. 769.) Here, however, there is a total absence of any form of regulation with which Host must comport in the First Amendment area. The city has, in effect, attempted to give Host the power to limit distribution to such newspapers as it selects, including selection on the basis of “the content of the ideas sought to be expressed” (Dillon v. Municipal Court (1971) 4 Cal.3d 860, 870 [94 Cal.Rptr. 777, 484 P.2d 945]). Such discretion cannot be constitutionally imparted to Host.
The fact that the streets in front of the airline terminals have not been formally dedicated to public use but are maintained by the Board in their proprietary capacity, does not alter our decision. As the court said in Food Employees v. Logan Plaza (1968) 391 U.S. 308, 316 [20 L.Ed.2d 603, 88 S.Ct. 1601] (citing Marsh v. Alabama (1946) 326 U.S. 501 [90 L.Ed. 265, 66 S.Ct. 276]), “. . . under some circumstances, property that is privately owned may, at least for First Amendment purposes, be treated as though it were publicly held,” particularly where streets and sidewalks are involved. This principle is expressed in Food Employees v. Logan Plaza, supra, 391 U.S. at p. 315 [20 L.Ed.2d at p. 610] which holds, “. .'. that streets, sidewalks, parks and other similar public places are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely.” This principle was also stated in In re Hoffman (1967) 67 Cal.2d 845 [64 Cal.Rptr. 97, 434 P.2d 353], a case which involved leaflet distribution in Union Station, of Los Angeles, a privately owned railroad property. The city contended that the railroad opened its facilities only for the limited and specific purpose of use of the transportation facilities, and sought to distinguish the railroad property from streets and parks. The court did not agree; it *Supp. 14 held that, “(Similarly) the primary uses of railway stations can be amply protected by ordinances prohibiting activities that interfere with those uses. In neither case can First Amendment activities be prohibited solely because the property involved is not maintained primarily as a forum for such activities.” (In re Hoffman, supra, 67 Cal.2d at p. 850.) In addition, the court said, “. . . the test is not whether petitioners’ use of the station was a railway use, but whether it interfered with that use.” (In re Hoffman, supra, 67 Cal.2d at p. 851.) Petitioners in the Hoffman case, like appellant here, did not interfere with the operation of the facilities.
In another transportation terminal case the court held that the question of title to property is not dispositive: “ ‘. . . the more an owner for his advantage opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it.’ ” (Wolin v. Port of New York Authority (2d Cir. 1968) 392 F.2d 83, 88, quoting Marsh v. Alabama, 326 U.S. at p. 506 [90 L.Ed. at pp. 268-269].)
To preserve the questioned ordinance from the rigors of unconstitutionality, we must construe First Amendment activities such as the sale of newspapers, as falling outside its scope. The court in In re Kay (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142] put it thus: “We must, however, presume that the Legislature intended to enact a valid statute; we must, in applying the provision, adopt an interpretation that, consistent with the statutory language and purpose, eliminates doubts as to the provision’s constitutionality.”
The judgment is reversed.
Holmes, P. J., concurred.

 Section 602.4. “Every person who enters or remains on airport property owned by a city, county, or city and county but located in another county, and sells, peddles, or offers for sale any goods, merchandise, property, or services of any kind whatsoever, to members of the public, including transportation services, other than charter limousines licensed by the Public Utilities Commission, on or from the airport property, without the express written consent of the governing board of the airport property, or its duly authorized representative, is guilty of a misdemeanor.
Nothing in this section affects the power of a county, city, or city and county to regulate the sale, peddling or offering for sale of goods, merchandise, property, or services.”