**INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS OF CALIFORNIA, INC., et al., Plaintiffs,**

v.

**The CITY OF LOS ANGELES, et al., Defendants.**

**No. CV 97–3616 JGD (VAPx).**

United States District Court,
C.D. California,
Western Division.

June 9, 1997.

Fleishman Fisher & Moest, Barry A. Fisher, David Grosz, Los Angeles, CA, David M. Liberman, Los Angeles, CA, Deborah Zexter, Beverly Hills, CA, for Plaintiffs.

City Attorney Office, James K. Hahn, John Werleich, Deputy City Attorney, Los Angeles, CA, for Defendants.

Munger Tolles & Olson, Marc Becker, Los Angeles, CA, for amicus curiae Center for Community Interests.

## ORDER GRANTING PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION

DAVIES, District Judge.

On June 6, 1997, the Plaintiffs' Application for Preliminary Injunction came on for hearing. The Court, having considered the written submissions of the parties and amicus curiae, and the oral argument of counsel, hereby GRANTS the Application.

### Background

The Complaint in this matter was filed on May 13, 1997. There are four named Plaintiffs: (1) International Society for Krishna Consciousness, Inc. ("ISKCON"), a California nonprofit, religious corporation; (2) Emil Beca, a member of ISKCON; (3) Committee for Human Rights in Iran ("CHR"), a California, public benefit corporation; and (4) Reza Nabati, a member of CHR. The three named Defendants are: (1) the City of Los Angeles, which owns and operates Los Angeles International Airport ("LAX"); (2) Stephen Yee, the manager of LAX; and (3) Gilbert A. Sandoval, the Chief of Airport Police.

The lawsuit arises as a result of the City's recent enactment of an amendment to the Los Angeles Administrative Code. Specifically, pursuant to Ordinance Number 171552:

Subdivision (c) of Section 23.27 of the Los Angeles Administrative Code is hereby amended to read:

(c)(1) No person shall solicit and receive funds inside the airport terminals at the Airport.

(2) No person shall solicit and receive funds in the parking areas at the Airport.

(3) No person shall solicit and receive funds on the sidewalks adjacent to the airport terminals or the sidewalks adjacent to the parking areas at the Airport.

(4) Subdivisions (c)(1), (c)(2), and (c)(3) apply only if the solicitation and receipt of funds is conducted by a person to or with passers-by in a continuous or repetitive manner. Nothing here in is intended to prohibit the distribution of flyers, brochure, pamphlets, books, or any other printed or written matter as long as such distribution is not made with the intent of immediately receiving funds, as defined in subdivision (c)(5), at the locations referred to in (c)(1), (c)(2), or (c)(3).

(5) "Solicit and receive" funds means any written or oral request for (A) the donation of money, alms, property or anything else of value, or, (B) the pledge of a future donation of money, alms, property, or anything else of value, or, (C) the sale or offering for sale of any property upon the representation, express or implied, that the proceeds of such sale will be used for a charitable or religious purpose.

(6) If any provision of Sec. 23.27(c) is declared invalid, the validity of any other provision contained in Sec. 23.27(c) shall remain in effect.

Los Angeles, Cal., Ordinance 171552 (Apr. 1, 1997). The Ordinance was scheduled to take effect on May 15, 1997.

Members of ISKCON follow the evangelical teachings of Krishna consciousness, a religion that is related to Hinduism. A tenet of

the religion is to disseminate the written teachings of Krishna consciousness as widely as possible. ISKCON members are required to venture into public places in order to proselytize, sell and distribute religious literature, seek support, including donations, for their religious undertakings, and provide information about Krishna consciousness. This activity is known as *sankirtan.*

CHR was founded in 1993. Its purpose is to publicize ongoing human rights abuses in Iran and to assist the victims of persecution and torture. Among other things, it also monitors and investigates human rights abuses of children, women, and religious minorities in Iran and provides emergency supplies and relocation to needy refugees. CHR members solicit donations for their cause.

The Plaintiffs seek to conduct their activities in the interior, general circulation areas of the LAX terminals because of the large number and diversity of people that can be found there. Compl. at 5. The LAX complex occupies 3,500 acres within the City. In 1996, LAX serviced a total of 57,974,559 passengers, making it the third busiest airport in the United States and the fifth busiest in the world. The upper level of the airport contains many commercial concessions and amenities, including four duty free shops, five fast food restaurants, five full service restaurants, 18 gift shops/newsstands, 19 cocktail lounges, five cafeterias, eight snack bars, three coffee shops, two food courts, six business centers, two bookstores, three postal facilities, and four specialty stores. The Plaintiffs aver that they limit their activities to the interior, commercialized areas of LAX. Compl. at 6.

The Department of Airports ("DOA") governs LAX. In turn, the DOA is under the management and control of a board of five commissioners known as the Board of Airport Commissioners ("Board"). As a response to what it perceived as a growing problem with solicitors, the Board requested that the City enact the Ordinance described above. According to the Defendants, the complaints relating to solicitors are legion, but "[t]he story is the same. . . . The solicitors annoy, harass, delay and in some in-

stances con the traveling public." Opp. at 16. This impelled the City to take action.

In the Complaint, the Plaintiffs allege that the Ordinance violates their rights under the Liberty of Speech Clause of the California Constitution, the First Amendment to the United States Constitution, and the Religious Freedom and Restoration Act of 1993. On May 14, 1997, the Court issued a Temporary Restraining Order preventing the Defendants from applying the terms of the Ordinance, which was to go into effect the next day, to the Plaintiffs. The purpose of the Temporary Restraining Order was to preserve the status quo until a full hearing on the merits could be conducted.

## Discussion

### A. The Standard for Injunctive Relief

The standard for issuing injunctive relief in the Ninth Circuit requires the moving party to "meet its burden by demonstrating *either:* (1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted; or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor." *International Jensen v. Metrosound U.S.A.,* 4 F.3d 819, 822 (9th Cir.1993). Moreover, "[t]he standards 'are not separate tests but the outer reaches of a single continuum.'" *Id.* (quoting *Regents of University of California v. American Broadcasting Cos.,* 747 F.2d 511, 515 (9th Cir. 1984)).

If the Plaintiffs demonstrate probable success on the merits of their claims, a finding of irreparable injury is virtually mandated since the right at issue relates to freedom of speech. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976).

### B. The Constitutionality of the Ordinance Under California Law

### 1. California Law is Not Co-extensive with Federal Law in Regard to the Issues Raised in this Case

■ Generally speaking, district courts must address issues of state constitutional

law prior to addressing issues of federal constitutional law.[1] The Ninth Circuit has provided:

It is well-established that we should avoid adjudication of federal constitutional claims when alternative state grounds are available. Where the state constitutional provisions are co-extensive with related federal constitutional provisions, we may decide the federal constitutional claims because that analysis will also decide the state constitutional claims. However, where the state provisions offer more expansive protection than the federal constitution, we must address the state constitutional claims in order to avoid unnecessary consideration of the federal constitutional claims.

*Vernon v. City of Los Angeles,* 27 F.3d 1385, 1391–92 (9th Cir.), *cert. denied,* 513 U.S. 1000, 115 S.Ct. 510, 130 L.Ed.2d 417 (1994) (citations omitted).

█ It is widely recognized that the Liberty of Speech provision of the California Constitution provides more expansive protection of speech than does the First Amendment to the United States Constitution. *See Carreras v. City of Anaheim,* 768 F.2d 1039, 1043 n. 7 (9th Cir.1985); *Wilson v. Superior Court,* 13 Cal.3d 652, 658, 119 Cal.Rptr. 468, 472, 532 P.2d 116, 120 (1975) (stating that the Liberty of Speech Clause is "more definitive and inclusive than the First Amendment"); *Robins v. Pruneyard Shopping Center,* 23 Cal.3d 899, 908, 153 Cal.Rptr. 854, 859, 592 P.2d 341, 346 (1979), *aff'd,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980). The Liberty of Speech Clause of the California Constitution provides that "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right. A law may not restrain or abridge liberty of speech or press." Cal. Const. art. 1, § 2(a).

The Defendants argue that, while the Liberty of Speech Clause may be more expansive than the First Amendment in some contexts, it is not more expansive in the instant context. Thus, the Defendants maintain that the California Constitution and the United States Constitution are co-extensive and the Court should therefore begin and end its analysis of the constitutionality of the Ordinance under federal law.

In addressing this issue and, indeed, all state law issues in this case, the Court must bear in mind:

[A] federal court interpreting state law is bound by the decisions of the highest state court. Moreover, federal courts are not precluded from affording relief simply because neither the state supreme court nor the state legislature has enunciated a clear rule governing a particular type of controversy or claim. Where the state supreme court has not spoken on an issue presented to a federal court, the federal court must determine what result the state supreme court would reach based on state appellate court opinions, statutes, and treatises.

*Vernon,* 27 F.3d at 1391.

This case clearly implicates the issue of whether an airport is a public forum. California law and federal law are not co-extensive regarding this issue. As will be discussed below, the Court finds that the California courts do apply a forum-based approach to issues of state constitutional law, however, this approach is different than the one utilized in regard to federal constitutional law. That is, California courts, like the federal courts, are concerned with whether a forum is a public forum. However, the test under California law, basic incompatibility, is different than under federal law, which categorizes the forum in one of three ways, based on such factors as the purpose of the forum, the extent of the use allowed by the government, and the government's intent in creating the forum. *See* Rodney A. Smolla, Smolla and Nimmer on Freedom of Speech § 10.02[3][a]–[c] (1994).

The Supreme Court has recognized three types of forums, whose identification is necessary before undertaking a First Amend-

---

1. The Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3). The Court has supplemental jurisdiction over the claims arising under California state law pursuant to 28 U.S.C. § 1367(a), as the state law claims are so related to the federal claims that they form part of the same case or controversy.

ment analysis. The first type of forum is the traditional public forum, such as streets and parks, which " 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' " *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983) (quoting *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939)). The second type of forum is the designated or limited-use public forum, which "consists of public property which the State has opened for use by the public as a place for expressive activity." *Id.* Finally, there is all remaining public property or the nonpublic forum. *Id.* Regulation of traditional public forums and designated public forums is measured under a strict scrutiny standard, while regulation of nonpublic forums "need only be reasonable, so long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view." *International Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678–79, 112 S.Ct. 2701, 2705, 120 L.Ed.2d 541 (1992).

The Defendants argue that the California state courts likewise utilize this forum-based approach such that the analysis in this case is not different under federal as opposed to state law. For this proposition, the Defendants cite *Leeb v. DeLong*, 198 Cal.App.3d 47, 56, 243 Cal.Rptr. 494, 499 (1988) and *Lopez v. Tulare Joint Union High School District Board of Trustees*, 34 Cal.App.4th 1302, 40 Cal.Rptr.2d 762, 778 (1995). In *Leeb*, 243 Cal.Rptr. at 499, a case ostensibly brought under the California Constitution, the court, relying on federal authorities, explicated the three types of forums discussed above. Similarly, in *Lopez*, 40 Cal.Rptr.2d at 778 (citation omitted), a case also brought under the California Constitution, the court stated that "[t]he California courts have adopted a forum analysis to determine when the government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes. To this end, the court has divided public property

into three categories: public, nonpublic, and limited."

These two cases do seem to indicate that California courts apply the same forum based approach to issues of California constitutional law as federal courts apply to the United States Constitution. Nonetheless, the Court observes that neither of these cases was a decision of the California Supreme Court. Moreover, both of the cases involved the discrete matter of a school publication as a public forum and were primarily concerned with the issue of prior restraint. Finally, while the court in *Lopez* stated that California courts apply a forum based approach, it cited *Clark v. Burleigh*, 4 Cal.4th 474, 482, 14 Cal.Rptr.2d 455, 841 P.2d 975 (1992), for that proposition. *Lopez*, 40 Cal.Rptr.2d at 778. However, *Clark* addressed the legality of a state election law under the First Amendment and did not relate to any provision of the California Constitution. *Clark*, 14 Cal. Rptr.2d at 459–60, 841 P.2d at 979–80.

In a case more closely on point than either *Leeb* or *Lopez*, the California Supreme Court indicated that public forum analysis under state law involves considerations that are quite distinct from those applied under federal law. The court in *In re Hoffman*, 67 Cal.2d 845, 64 Cal.Rptr. 97, 434 P.2d 353 (1967), was confronted with the legality of a municipal ordinance that prohibited a person from being present in a public transportation terminal, including airports, for longer than reasonably necessary to conduct business with a carrier. *Id.* at 846 n. 1, 64 Cal.Rptr. 97, 434 P.2d 353. The petitioners in the case were convicted under the ordinance after passing out leaflets regarding the Vietnam war in Union Station, which is a railroad station in Los Angeles.

Although the railroad station was privately owned, the court observed that, with regard to municipal property, speech activities may not be prohibited "solely because the property involved is not maintained primarily as a forum for such activities." *Id.* at 850, 64 Cal.Rptr. 97, 434 P.2d 353. The court went on to articulate the test for whether a forum should be considered a public forum. Specifically, "the test is not whether the petition-

ers' use of the station was a railway use but whether it interfered with that use." *Id.*[2]

In *Prisoners Union v. California Department of Corrections,* 135 Cal.App.3d 930, 939, 185 Cal.Rptr. 634, 639 (1982), the court cast the test as "whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." Similarly, in *U.C. Nuclear Weapons Labs v. Lawrence Livermore Laboratory,* 154 Cal.App.3d 1157, 1164, 201 Cal.Rptr. 837, 843 (1984) (citations omitted), the court reiterated the rejection of "any 'rigid formulation' of the concept of public forum" and stated that "[t]his court has therefore adopted the 'basic incompatibility' test."[3]

The Ninth Circuit implicitly rejected the type of argument now proffered by the Defendants in its disposition of *Carreras v. City of Anaheim,* 768 F.2d 1039 (9th Cir.1985).[4] In *Carreras,* the City of Anaheim enacted an ordinance that prohibited solicitation in the parking areas and pedestrian walkways outside of Anaheim Stadium as well as on the exterior walkways of the Anaheim Convention Center. Both the stadium and the convention center were owned by the city.

█ In addressing whether these areas were public forums, the court did not, as the Defendants suggest here, apply principles of federal constitutional law. Instead, the court explicitly analyzed the public forum doctrine

under California law, in reliance on California state court cases. *Id.* at 1043–1047. The court explained that, "[w]hatever the validity of th[e] [district court's] reasoning may be under federal law, it is not determinative under the California Liberty of Speech Clause." *Id.* at 1045 n. 11.[5] The court went on to observe that, under California law, the "'public forum' doctrine is not limited to traditional public forums such as streets, sidewalks, and parks or to sites dedicated to communicative activity such as theaters." *Id.* at 1045. In other words, under California law, the definition of a public forum is broader than under federal law. The court stated that the ordinance would survive scrutiny under the California Constitution "only if the city meets its burden of establishing the basic incompatibility between the expressive activity and the intended use of the facility." *Id.*

In sum, for the reasons discussed above, the Defendants' argument that California law and federal law are co-extensive with regard to the issues confronting the Court is not persuasive. It seems evident that the standard for determining whether a forum is a public forum is different under California law, requiring an analysis under the basic incompatibility test. Federal courts do not apply this test to First Amendment issues. Therefore, California law and federal law are not co-extensive.[6]

**2.** Although *Hoffman* appeared to be addressing the First Amendment, the court in *Robins v. Pruneyard Shopping Center,* 23 Cal.3d 899, 908, 153 Cal.Rptr. 854, 859–60, 592 P.2d 341, 346–47 (1979), made it clear that *Hoffman* rested on California law. *See also Prisoners Union v. California Department of Corrections,* 135 Cal.App.3d 930, 940, 185 Cal.Rptr. 634, 639 n. 3 (1982).

**3.** The *U.C. Nuclear* court also explained that the Liberty of Speech Clause of the California Constitution "does not *mirror* the First Amendment either in form or content" and "for state constitutional analysis '[f]ederal principles are relevant but not conclusive so long as federal rights are protected.'" *U.C. Nuclear,* 154 Cal.App.3d at 1163, 201 Cal.Rptr. at 843 (quoting *Robins v. Pruneyard Shopping Center,* 23 Cal.3d 899, 909, 153 Cal.Rptr. 854, 592 P.2d 341 (1979)).

**4.** Obviously, the Ninth Circuit in *Carreras* could not have rejected an argument based on cases decided some years later. The Court finds *Carreras* instructive for its recognition that, in con-

texts more analogous to the instant situation than school publications, the California Supreme Court, and other California courts, have identified a public forum test under California law that is qualitatively different from that applied under federal law.

**5.** The court also noted that "[t]he district court based its conclusions on federal law.... [W]e do not reach the federal constitutional issues." *Carreras,* 768 F.2d at 1046 n. 9.

**6.** Although the Defendants do not raise it, the Court observes that California law and federal law are also apparently not co-extensive with regard to whether a regulation of solicitation is a regulation based on content. In *Heffron v. International Society for Krishna,* 452 U.S. 640, 648–49, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981), the Supreme Court indicated that a ban on all forms of solicitation is content-neutral. Meanwhile, in *Alternatives for California Women, Inc. v. County of Contra Costa,* 145 Cal.App.3d 436, 193 Cal.Rptr. 384 (1983), the court held that a

### 2. *Solicitation is a Protected Form of Speech Under the California Constitution*

■ There is no question that solicitation is a protected form of speech under both California and federal constitutional law.[7] "State and Federal decisions have well established the application of the First Amendment protections to charitable solicitations." *Hillman v. Britton*, 111 Cal.App.3d 810, 816, 168 Cal.Rptr. 852, 857 (1980). *See also International Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 677, 112 S.Ct. 2701, 2705, 120 L.Ed.2d 541 (1992) (stating that "[i]t is uncontested that the solicitation at issue in this case is a form of speech protected under the First Amendment"). In *People v. Fogelson*, 21 Cal.3d 158, 165, 145 Cal.Rptr. 542, 545, 577 P.2d 677, 680 (1978) (citations omitted), the California Supreme Court explained that "[m]any forms of solicitation are constitutionally protected. These include solicitation of religious contributions, solicitation of political contributions ... and solicitation of sales of protected literature." *See also Church of the Soldiers of the Cross of Christ v. City of Riverside*, 886 F.Supp. 721, 725 (C.D.Cal.1995) (recognizing that solicitation is protected under the California Constitution).

■ The protection of solicitation includes the sale of noncommercial printed matter. *Welton v. City of Los Angeles*, 18 Cal.3d 497, 503–04, 134 Cal.Rptr. 668, 671, 556 P.2d 1119, 1122 (1976). In *People v. Singer*, 50 Cal. App.3d Supp. 9, 12, 123 Cal.Rptr. 460, 462 (1975), the court observed that "the fact that a paper is sold, and not distributed free of charge does not ... deprive it of the protec-

tion of the First Amendment." Finally, the California Supreme Court, in the context of a case arising under the California Constitution, noted that " '[i]t should be remembered that the pamphlets of Thomas Paine were not distributed free of charge.... Freedom of speech, freedom of the press, freedom of religion are available to all, not merely those who can pay their own way.' " *Spiritual Psychic Science Church of Truth, Inc. v. City of Azusa*, 39 Cal.3d 501, 509, 217 Cal.Rptr. 225, 228, 703 P.2d 1119, 1122 (1985) (quoting *Murdock v. Pennsylvania*, 319 U.S. 105, 111, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943)).

### 3. *LAX as a Public Forum Under California Law*

#### a. *The California Courts Have Not Explicitly Addressed the Issue*

The Ordinance in this case bans solicitation in the terminals of LAX, as well as on the adjacent sidewalks and parking lots. In *International Society for Krishna Consciousness v. Lee*, 505 U.S. 672, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992), the Supreme Court upheld a regulation that banned solicitation in airport terminals in New York and New Jersey. The Supreme Court observed that, in operating the airport, the Port Authority of New York and New Jersey was acting in its proprietary capacity. *Id.* at 678, 112 S.Ct. at 2705. The Supreme Court held that the terminals are nonpublic forums and, thus, any restrictions on speech "need only satisfy the requirement of reasonableness." *Id.* at 683, 112 S.Ct. at 2708. Therefore, the Ordinance is consistent with federal law insofar as it bans solicitation in the terminals of LAX.[8]

---

ban on door-to-door solicitation during certain hours was an impermissible, content-based restriction. This point will be discussed further, *infra*.

7. Notwithstanding the above discussion, it appears that California and federal law are coextensive with regard to whether solicitation is protected speech. The Court includes this section simply to serve as an introduction. The parties do not dispute that solicitation may ordinarily be protected and instead focus their argument on whether LAX is a public forum and whether regulation of solicitation is regulation based on content, areas where California law has developed independently.

8. Although the regulation in *Lee* left the plaintiffs free to solicit on the sidewalks and parking lots, the Supreme Court's reasoning in *Lee* and other cases would seem to indicate that the instant Ordinance is constitutional under the Federal Constitution even though it extends the ban on solicitation to the sidewalks and parking lots adjacent to the terminals. *See e.g., United States v. Kokinda*, 497 U.S. 720, 727, 110 S.Ct. 3115, 3120, 111 L.Ed.2d 571 (1990) (upholding a ban on solicitation on a sidewalk in front of a post office, finding that it was not a traditional public forum because it "does not have the characteristics of public sidewalks.... The Postal Service's sidewalk is not ... a thoroughfare. Rather, it leads only from the parking area to the front

As discussed above, public forum analysis under California law is different than under federal law. Therefore, the Supreme Court's decision in *Lee* does not dictate any conclusions here. No California court has squarely addressed the issue of whether an airport is a public forum. However, several California courts have implied that airports are to be regarded as public forums.

In *People v. Fogelson,* 21 Cal.3d 158, 145 Cal.Rptr. 542, 577 P.2d 677 (1978), the California Supreme Court addressed the validity of an ordinance that banned solicitation on public property without a permit. The defendant, an adherent to the Hare Krishna faith, was "soliciting in the main lobby of the Trans World Airlines terminal" of LAX and subsequently arrested there. *Id.* at 162, 145 Cal.Rptr. 542, 577 P.2d 677. The court held that the statute was unconstitutional and reversed the conviction of the defendant. *Id.* at 167, 145 Cal.Rptr. 542, 577 P.2d 677. This disposition was apparently made on the basis of both federal and California law as the court stated that "[t]he issue presented to this court is whether this ordinance imposes an impermissible restriction upon free speech and free exercise of religion, as guaranteed by the First and Fourteenth Amendments to the United States Constitution and by article I, sections 2 and 4 of the California Constitution." *Id.* at 161, 145 Cal.Rptr. 542, 577 P.2d 677.

The decision in *Fogelson* tends to indicate that the California Supreme Court regarded the airport as a public forum. The court stated that "it is important to recognize that individuals in public places cannot expect the same degree of protection from contact with others as they are entitled to in their own homes." *Id.* at 166 n. 8, 145 Cal.Rptr. 542, 577 P.2d 677. The court also observed that "[t]he ordinance appears to extend to city streets and parks, clearly First Amendment forums, as well as to 'public' areas in municipal buildings, which are also appropriate areas for exercise of protected activity." *Id.* at 167 n. 9, 145 Cal.Rptr. 542, 577 P.2d 677. Since the case involved an arrest at LAX,

this language hints at an assumption by the court that the airport was, indeed, a public forum.

While the reasoning in *Fogelson* is encouraging for the Plaintiffs, it falls short of establishing that airports are public forums under California law. For one thing, the court never actually stated that airports are to be regarded as public forums. Moreover, to the extent the court may have assumed this to be the case, it may have been based on an interpretation under federal law that airports are public forums. Any such interpretation has obviously been refuted by the Supreme Court's decision in *International Society for Krishna Consciousness v. Lee,* 505 U.S. 672, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992). Furthermore, it was made explicit in *Fogelson,* 21 Cal.3d at 163, 145 Cal.Rptr. 542, 577 P.2d 677, that "[t]his court need not determine whether appellant was engaged in constitutionally protected activity in order to entertain his contention that the ordinance is invalid on its face." The decision rested on the conclusion that the ordinance was invalid on its face because it vested excessive discretion in public officials to decide who would be given a license to solicit. *Id.* at 167, 145 Cal.Rptr. 542, 577 P.2d 677. Thus, the court did not address whether solicitation in an airport was a constitutionally protected activity or, in other words, whether the airport was an appropriate area for the free exercise of the right to solicit.

In further support of their position, the Plaintiffs direct the Court's attention to *People v. Singer,* 50 Cal.App.3d Supp. 9, 123 Cal.Rptr. 460 (1975). At issue in *Singer* was an ordinance that prohibited people from selling materials on airport property without a permit. *Id.* at 11 n. 1, 123 Cal.Rptr. 460. The defendant was convicted, pursuant to the ordinance, for selling a newspaper "on the sidewalk in front of one of the airline terminals, without having obtained a permit." *Id.* The tenor of the opinion indicated that the airport was a public forum. However, any value of this decision in determining whether

door of the post office."). *See also Doucette v. City of Santa Monica,* 955 F.Supp. 1192, 1202 (C.D.Cal.1997) (citing "public parking lots or structures" as examples of "areas which are

clearly not public fora"). Nonetheless, at this point, the Court need not express any opinion as to whether the Ordinance passes muster under the Federal Constitution.

an airport is a public forum under California law is minimized by the fact that *Singer* rested solely on a First Amendment analysis.

Finally, the Plaintiffs rely on *In re Hoffman,* 67 Cal.2d 845, 64 Cal.Rptr. 97, 434 P.2d 353 (1967). As indicated above, in *Hoffman,* the California Supreme Court invalidated an ordinance that prohibited a person from being present in a public transportation terminal, including airports, for longer than reasonably necessary to conduct business with a carrier. *Id.* at 846 n. 1, 64 Cal.Rptr. 97, 434 P.2d 353. The petitioners in the case were convicted after passing out leaflets in Union Station. The Plaintiffs contend that, inasmuch as the *Hoffman* court found the railroad station to be a public forum, this holding should apply equally to an airport as it is directly analogous to a railroad station.

While *Hoffman* is useful, it cannot be taken to establish that LAX is a public forum. Without addressing the viability of the analogy between a railroad station and an airport,[9] there are other differences that make *Hoffman* distinguishable from the instant case. Chief among these differences is that the speech behavior directly implicated in *Hoffman* was handing out leaflets and not solicitation. While solicitation is protected speech, there is no denying that it is qualitatively different from handing out leaflets. Since a public forum determination under California law is based on the interference or basic incompatibility test, it hinges on an analysis of the interaction of the type of speech at issue and the purpose of the forum where it takes place. Consequently, the actual holding of *Hoffman* is not dispositive of the Court's conclusion in this case, although, as discussed below, the underlying reasoning is highly instructive.

In sum, the California courts have not squarely addressed the issue of whether an airport is a public forum under California law. While the decisions may be read as implying that this is the case, the matter is not settled, although the applicable standard is clear. Therefore, the Court must undertake its own analysis, applying the appropriate test, in order to determine whether LAX is a public forum.

### b. *Application of the Basic Incompatibility Test*

 As discussed above, the Ninth Circuit has construed the public forum test under California law as one of basic incompatibility between the speech sought to be regulated and the purpose of the forum. That is, "the test under California law is whether the communicative activity 'is basically incompatible with the normal activity of a particular place at a particular time.'" *Carreras v. City of Anaheim,* 768 F.2d 1039, 1045 (9th Cir.1985) (quoting *Prisoners Union v. California Department of Corrections,* 135 Cal.App.3d 930, 939, 185 Cal. Rptr. 634, 639 (1982)). Put another way, "[u]nder California law ... such locations [where the public is free to come and go] must be open to expressive activity unless the activity is basically incompatible with the primary use of the facility." *Id.* Moreover, the burden of establishing basic incompatibility is clearly on the Defendants. *Id.* (stating that the ordinance would be constitutional "only if the city meets its burden of establishing the basic incompatibility between the expressive activity and the intended use of the facility"). *Id.*[10]

 Accordingly, the Court must consider what the primary or intended purpose of LAX is. There can be no dispute that the primary purpose of LAX is to serve as an

**9.** In *International Society for Krishna Consciousness v. Lee,* 505 U.S. 672, 681–83, 112 S.Ct. 2701, 2707–08, 120 L.Ed.2d 541 (1992), the Supreme Court rejected any such analogy under federal law.

**10.** The Court notes that *In re Hoffman,* 67 Cal.2d 845, 64 Cal.Rptr. 97, 434 P.2d 353 (1967), is the seminal case on public forum analysis under California law. In that case, the California Supreme Court cast the test as whether the speech activity interfered with the use of the railway station. *Id.* at 851, 64 Cal.Rptr. 97, 434 P.2d 353. However, California courts subsequently referred to the test as one of basic incompatibility. *See Prisoners Union v. California Department of Corrections,* 135 Cal.App.3d 930, 939, 185 Cal.Rptr. 634, 639 (1982); *U.C. Nuclear Weapons Labs v. Lawrence Livermore Laboratory,* 154 Cal. App.3d 1157, 1164, 201 Cal.Rptr. 837, 843 (1984). The Ninth Circuit has likewise, in *Carreras,* construed the test as one of basic incompatibility and this is the test the Court will apply.

airport, and facilitate the travel of millions of passengers annually. This involves issues of controlling crowds, securing areas, and regulating pedestrian traffic flow inside the terminals and on the adjacent sidewalks. The task of smooth facilitation of passenger movement in the airport is complicated by the fact that many passengers are from foreign countries or at least are unfamiliar with the airport, are traveling weighted down by luggage, are traveling with family including small children, and are often in a hurry to get to the next gate in order to catch a flight.

Notwithstanding these considerations, it is clear that LAX does more than simply facilitate passengers getting on or off flights, and in and out of the airport area. As discussed above, the upper levels of LAX contain a myriad of consumer outlets, providing such things as fast food, retail gift shops, and newsstands. The Court finds comments made by Justice O'Connor in her concurring opinion in *International Society for Krishna Consciousness v. Lee*, 505 U.S. 672, 112 S.Ct. 2711, 120 L.Ed.2d 541 (1992), particularly apropos. Specifically, Justice O'Connor stated:

> The Port Authority ... contends that it ... has dedicated its airports to a single purpose—facilitating air travel—and that the speech it seeks to prohibit is not consistent with that purpose. But the wide range of activities promoted by the Port Authority is no more directly related to facilitating air travel than are the types of activities in which the International Society for Krishna Consciousness, Inc. (ISKCON), wishes to engage. In my view, the Port Authority is operating a shopping mall as well as an airport.

**11.** Prior to making these statements, Justice O'Connor noted:

In this case, the "special attributes" and "surrounding circumstances" of the airports operated by the Port Authority are determinative. Not only has the Port Authority chosen not to limit access to airports under its control, it has created a huge complex open to travelers and nontravelers alike. The airports house restaurants, cafeterias, snack bars, coffee shops, cocktail lounges, post offices, banks, telegraph offices clothing shops, drug stores, food stores, nurseries, barber shops, currency exchanges, art exhibits, commercial advertising displays,

*Id.* at 688–89, 112 S.Ct. at 2713 (citation omitted).[11] These observations are equally applicable here.[12]

More importantly, such considerations do seem to be relevant under California law. In *In re Hoffman*, 67 Cal.2d 845, 847, 64 Cal. Rptr. 97, 98, 434 P.2d 353, 354 (1967), the California Supreme Court took particular note that the train station "is a spacious area open to the community as a center for rail transportation. It also houses a restaurant, a snack bar, a cocktail lounge, and a magazine stand. Not only passengers but friends and relatives of passengers may freely enter and use the facilities.... Entry is also free to those who seek food or drink and magazines or newspapers." Similarly, with regard to LAX, while there are areas that are secured and not open to the public generally, there are also areas where passengers, friends, and relatives may go freely to get a bite to eat or pick up some reading material.

Along these lines, in *Prisoners Union v. California Department of Corrections*, 135 Cal.App.3d 930, 938, 185 Cal.Rptr. 634, 638–39 (1982) (citation omitted), the court stated that "[t]he question is not merely whether the [forum at issue] is or is not a 'public forum.' Rather, the question is 'one of balancing, based on the nature of the forum, the governmental interest in enforcing the restrictions against the inhibitions the restrictions impose on the speech-related activity.'" Thus, while the purpose of LAX is undoubtedly to facilitate air travel, the Court will bear in mind that the nature of LAX is also, in some respects, akin to a shopping mall open to the general public. *See Robins v. Pruneyard Shopping Center*, 23 Cal.3d 899, 153 Cal.Rptr. 854, 592 P.2d 341 (1979); *In re*

bookstores, newsstands, dental offices and private clubs.

*Lee*, 505 U.S. at 688, 112 S.Ct. at 2712.

**12.** So as not to mischaracterize Justice O'Connor's opinion, the Court notes that, in spite of these observations, she did vote with the majority of the Supreme Court in upholding the solicitation ban as a reasonable regulation. However, that a solicitation ban in an airport is reasonable under federal law obviously does not establish that solicitation is basically incompatible with the purpose of LAX under the broader protection of California law.

*Lane,* 71 Cal.2d 872, 79 Cal.Rptr. 729, 457 P.2d 561 (1969).

The Court has reviewed the evidence submitted by the Defendants in support of their position that solicitation is basically incompatible with the purpose of LAX.[13] The gist of much of the evidence is that the solicitors annoy passengers, tenants, concessionaires, and airport employees at LAX. The Defendants also include a variety of idiosyncratic incidents of solicitors engaging in behavior that could be characterized as harassment or fraud and cases where solicitors, at the very least, take advantage of individuals who may be unfamiliar with the customs or practices of this country. Finally, the Defendants devote a great deal of attention to describing the problems with crowding and congestion at LAX.[14] As discussed below, these considerations cannot support the constitutionality, under California law, of an ordinance that completely bans solicitation anywhere on the airport grounds.

It is clear that one of the reasons underpinning the enactment of the Ordinance is that the solicitors tend to annoy or be a nuisance to those who have occasion to be at LAX. Indeed, the Defendants cite annoyance as a factor in the Opposition Brief. Opp. at 16. As part of the Opposition, the Defendants offer declarations of two individuals who are ordinary citizens, and not affiliated with LAX in any way. *See* Paris Decl., Elovitz Decl. Presumably, these declarations are meant to represent the experiences that an average user of LAX may encounter. Based on his experience, Mr. Paris states that the solicitors "make me uncomfortable." Paris Decl. ¶ 4. Similarly, Ms. Elovitz explains, based on her experience, that "I have never liked the presence of solicitors in the terminals or parking lots at LAX. When I am at LAX, I go out of my way to avoid the solicitors." Elovitz Decl. ¶ 14. Both Mr.

Paris and Ms. Elovitz, in a sentiment reiterated throughout many of the declarations submitted by the Defendants, state that they feel as though the solicitors create an unfavorable impression of Los Angeles on those who pass through LAX. Paris Decl. ¶ 7, Elovitz Decl. ¶ 9.

The fact that protected speech may be annoying cannot be used to justify its limitation. In *Carreras v. City of Anaheim,* 768 F.2d 1039 (9th Cir.1985), the Ninth Circuit addressed the issue of whether the walkways outside of Anaheim Stadium and the Anaheim Convention Center were public forums. The City of Anaheim had banned solicitation in those areas. The court noted that "the city argues that patrons may be offended by ISKCON solicitation outside the stadium. 'Annoyance and inconvenience, however, are a small price to pay for preservation of our most cherished right.' " *Id.* at 1045–46 (quoting *Wirta v. Alameda–Contra Costa Transit District,* 68 Cal.2d 51, 62, 64 Cal.Rptr. 430, 437, 434 P.2d 982, 989 (1967)).

Thus, the Ninth Circuit, applying California law, flatly rejected the type of argument the Defendants make here. That people are annoyed or made uncomfortable by solicitors, or feel that the solicitors reflect unfavorably on Los Angeles, is simply not a justification for banning the Plaintiffs' protected right to solicit and cannot be used by the Defendants to satisfy their burden of establishing that solicitation is basically incompatible with the purpose of the LAX. "[A] mere annoyance does not establish incompatibility." *Id.* at 1046.

Alternatively, the Defendants proffer the argument that the behavior of the solicitors goes beyond simple, but annoying, requests for donations, and is basically incompatible with the purpose of LAX. In this regard, the Defendants offer evidence that the solicitors

---

13. The Defendants do not argue, explicitly, that solicitation is basically incompatible with the purpose of LAX. As discussed, *supra,* the Defendants argue that federal law and California law are co-extensive regarding the instant issues. Thus, the Defendants argue on the basis of federal law, which does not call for the application of the basic incompatibility test. Nonetheless, the rationale for enacting the Ordinance in the first place, and much of the evidence submitted by the

Defendants, rests, at least implicitly, on the theory that LAX cannot properly function, or function optimally, if the Plaintiffs are allowed to continue their activities.

14. The Court notes that much of the "evidence" submitted by the Defendants, in the form of statements contained in declarations, is of dubious admissibility.

sometimes engage in borderline, if not outright, harassment of would-be donors. Specifically, the Defendants contend that solicitors block the paths of individuals, shout abusive language or threats at them, and, in some instances, touch them or take their money without their permission. Moreover, the Defendants argue that there are indications that some of the solicitors do not represent any charitable organization and instead simply pocket the money themselves.

The court in *Carreras* found a substantially similar argument unpersuasive. Specifically:

> Anaheim argues that "bad conduct" by ISKCON solicitors in the past demonstrates the fundamental incompatibility of solicitation with the intended purposes of the stadium. Such "bad conduct" includes solicitation outside agreed upon areas, touching of stadium patrons without consent, retrieval of "gifts" such as bumper stickers when a donation was not forthcoming, and misrepresentation of the purpose of solicitation. Such conduct does not prove that solicitation is inherently incompatible with the intended uses of the stadium. Most of the allegedly "bad" conduct constitutes at most an[ ] annoyance to the stadium's patrons. As noted above, a mere annoyance does not establish incompatibility. To the extent that the conduct of ISKCON solicitors is fraudulent or is physically intrusive, the problem can be dealt with through narrowly tailored rules and security precautions. An occasional incident of misconduct cannot justify the absolute denial of access to ISKCON solicitors.

*Carreras*, 768 F.2d at 1046.

The Court is, of course, concerned about the alleged bad conduct of the solicitors. However, the Court notes that physically restraining someone or obtaining a donation via fraud is not protected speech. The City may pass and enforce laws against this type of behavior.[15] The Court is also troubled by the assertion that the solicitors apparently target foreign tourists, particularly Asian tourists, because they are more likely to be unfamiliar with the customs of this country and feel like they are obliged to donate. Nonetheless, this problem could easily be dealt with short of banning all solicitation. For example, signs in the areas where these passengers arrive, in a language they are likely to be familiar with, that inform them that they are under no obligation whatsoever to donate to solicitors may ameliorate the problem. In any event, "[a]n occasional incident of misconduct cannot justify absolute denial of access to ISKCON solicitors." *Id.*

The final consideration is the congestion problem. The Court finds some merit to the contention by the Defendants that solicitation is basically incompatible with the crowds that develop as part of LAX's purpose of facilitating air travel. Solicitation is qualitatively different from other forms of speech, as discussed by the Supreme Court in *International Society for Krishna Consciousness v. Lee*, 505 U.S. 672, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) and *United States v. Kokinda*, 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990). Unlike leafletting, for example, solicitation requires the one at whom the speech is directed to stop, listen to the solicitor or read the solicitor's message, make a decision about whether to donate, and, if the decision is in the affirmative, to reach in a pocket, get out a wallet, or open a purse, and hand over the money. Given the crowds of people attempting to get from one place to another, both in the terminals and on the sidewalks, an obstruction created by the solicitors and those being solicited could make solicitation basically incompatible with the purpose of LAX.

---

15. The Court acknowledges that it may be difficult for the City to document such incidents as the person subject to the bad conduct may be in a hurry to catch a flight and not want to stop and formally file a complaint. However, the Court finds that this does not make solicitation basically incompatible with the purpose of the airport. It simply cannot be the case that every person victimized in this fashion is in a hurry to catch a flight. Indeed, according to evidence submitted by the Defendants, a person spends, on average, almost three hours in LAX. *See* McHargue Decl. ¶ 17. Moreover, based on the declarations, it seems that this bad conduct is often witnessed by those who work at the airport and who, presumably, are not going anywhere that would prevent them from verifying that such events occurred.

Notwithstanding these observations, the Court finds that the Defendants have fallen short of satisfying their burden of showing that solicitation, at all times and at all places on the airport grounds, is basically incompatible with the purpose of LAX. While the Court has no doubt that LAX may be subject to large crowds at certain times and at certain locations therein, this is a far cry from finding that LAX is too crowded at all times, and in all areas, to allow for solicitation. The Defendants have not justified the contention that solicitation must be completely banned in order to address the problems that it may create in crowded areas of LAX.

The issues raised by the Defendants could be addressed without so severely curtailing the Plaintiffs' protected right to solicit. As the California Supreme Court explained in *In re Hoffman*:

> There are ways to prevent these evils [chaos, confusion, and congestion] and preserve the primary purpose of terminals ... without forbidding the exercise of First Amendment freedoms within them.... Congestion can be avoided by controls on activities during peak hours. Reasonable and objective limitations can be placed on the number of persons who can be present for First Amendment activities at the same time, and the persons present can be required to place themselves so as to limit disruption. In areas normally subject to congestion, such as ticket windows and turnstiles, First Amendment activities can be prohibited. Persons can be excluded entirely from areas where their presence would threaten personal danger or block the flow of passenger or carrier traffic, such as doorways and loading areas.

> In short, the ... ordinance completely prohibits protected activities although a narrower measure would fully achieve the intended ends and at the same time preserve an effective place for the dissemination of ideas. Because of the overbreadth of coverage in this ordinance, the language prohibiting presence in a terminal longer than reasonably necessary to conduct business with a carrier is unconstitutional

67 Cal.2d 845, 852–53, 64 Cal.Rptr. 97, 101–02, 434 P.2d 353, 357–58 (1967) (citations omitted).

Likewise, in *Carreras,* 768 F.2d at 1045 n. 12, the court noted that "Anaheim also argues that solicitation by ISKCON may create problems of crowd and traffic control but cites no evidence that those problems cannot be managed by restrictions short of a ban on all solicitation." This statement is equally true here.[16] As the court in *Prisoners Union,* 135 Cal.App.3d at 938, 185 Cal.Rptr. 634, put it, the analysis "depends on whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." While solicitation may be incompatible with the normal activity of LAX in particular areas, at particular times, there has been no showing that solicitation in all areas at all times is basically incompatible. "Absent the presence of some conflicting interest that could be protected in no other way, [Plaintiffs] have the right to choose their own forum." *Hoffman,* 67 Cal.2d at 852 n. 7, 64 Cal.Rptr. at 101 n. 7, 434 P.2d at 357 n. 7.[17]

Based on the above discussion, the Court finds that solicitation is not basically incompatible with the purpose of LAX because there is no evidence that the problems purportedly caused by solicitors could not be effectively controlled by use of less restrictive measures. That is, under California law, when banning a protected speech activity in a forum open to the general public, the City

---

16. For example, the Court notes that roving concessionaires are not allowed in the airport because of their impact on passenger traffic and congestion. Portnoy Decl. ¶ 9. Thus, licensed concessionaires are to remain in one place. There is no indication that the City ever tried to similarly limit solicitors to designated areas.

17. Perhaps subjecting solicitors to a permit requirement, where discretion for granting such permits is limited based on consideration of the discrete problems described above, would suffice to address the City's concerns. *See People v. Fogelson,* 21 Cal.3d 158, 145 Cal.Rptr. 542, 577 P.2d 677 (1978). In *Fogelson,* the California Supreme Court indicated that it would have upheld the ordinance at issue in that case, which required a permit to solicit in public places including LAX, if the ordinance had not conferred discretion on licensing officials that was unbounded by any guiding standards. *Id.* at 167, 145 Cal.Rptr. 542, 577 P.2d 677.

bears the burden of establishing that the activity is basically incompatible with the purpose of that forum. A protected speech activity is not basically incompatible with the purpose of a forum if the disruption it causes could be controlled by measures short of a complete ban on the activity. The Defendants have not shown that the problems purportedly caused by solicitors at LAX could not be effectively managed by less sweeping measures. Therefore, the Ordinance is inconsistent with the Liberty of Speech Clause of the California Constitution.

### 4. The Invalidity of the Ordinance on its Face

Because the Ordinance singles out solicitation for regulation, it works an impermissible, content-based restriction under the California Constitution and is, thus, facially invalid. In *Alternatives for California Women, Inc. v. County of Contra Costa,* 145 Cal.App.3d 436, 193 Cal.Rptr. 384 (1983), the court addressed the constitutionality of an ordinance banning door-to-door solicitation during certain hours. The court stated:

> Time, manner, and place regulations must be applicable to all speech without regard to content. The challenged ordinance permits unlimited access by persons who wish to approach residents about random subjects, but it does not do this for persons or organizations soliciting funds (such as ACW). The ordinance discriminates on the basis of the content of a speaker's message to the extent that a person who literally *solicits* from residents is regulated but one who seeks only a receptive listener is not. This disparity has the effect of making the ordinance constitutionally deficient.

*Id.* at 450, 193 Cal.Rptr. 384.

Although the California Supreme Court has never addressed whether regulation directed solely at solicitation of money violates the California Liberty of Speech Clause, the Ninth Circuit adopted the holding of *Alternatives for California Women* as the law of California regarding this issue in *Carreras v. City of Anaheim,* 768 F.2d 1039 (9th Cir. 1985). The *Carreras* court found *Alternatives for California Women* "directly on point." 768 F.2d at 1048. In *Carreras,* the court noted that *Alternatives for California Women* "is most plausibly interpreted as independently grounded on the [ ] California Liberty of Speech Clause." *Id.* at 1048 n. 21. After quoting the exact language from *Alternatives for California Women* quoted above, the court explained that "[j]ust as the ordinance considered in *Alternatives for California Women* did, the Anaheim ordinance regulated only those speakers whose message includes an appeal for funds. We thus conclude that the ordinance on its face violated the California Constitution by discriminating between regulated and unregulated speech on the basis of its content." *Id.* at 1048.

Likewise, in *Church of the Soldiers of the Cross of Christ of the State of California v. City of Riverside,* 886 F.Supp. 721 (C.D.Cal. 1995), Judge Baird of the Central District of California struck down an ordinance, which banned solicitation, as facially invalid under the California Constitution. The ordinance at issue in *Church of the Soldiers* articulated a ban on "aggressive solicitation" in public places. *Id.* at 722 n. 1. The court found that "[t]he Riverside solicitation ordinance violates the California Constitution on its face because of its content-based distinction between regulated and unregulated speech." *Id.* at 724. The court acknowledged that "[a]lthough the *Alternatives for California Women* court cited only federal cases in its discussion of this point, its holding 'is most plausibly interpreted as independently grounded' on the California Constitution's Liberty of Speech Clause." *Id.* at 725 n. 5 (quoting *Carreras v. City of Anaheim,* 768 F.2d 1039, 1048 n. 21 (9th Cir.1985)). After a discussion of both *Alternatives for California Women* and *Carreras,* the court rejected the argument that the ordinance was content neutral and stated that "[u]nder *Carreras* and *Alternatives for California Women* ... an ordinance violates the California Constitution if it regulates only those speakers whose message includes an appeal for funds, even if the ordinance regulates all speakers who appeal for funds." *Id.* at 725.

The Northern District of California has also found that an ordinance restricting solicitation is facially invalid under the California Constitution. In *Berkeley Community*

*Health Project v. City of Berkeley,* 902 F.Supp. 1084 (N.D.Cal.1995), the court was confronted with an ordinance prohibiting solicitation within a particular distance of automatic teller machines. The court observed that "[t]he Ninth Circuit has recognized *Alternatives for California Women* as the law of California in this regard...." *Id.* at 1090. The court then rejected the contention, which is made by amicus curiae in the instant matter, that "the case of *Savage v. Trammell Crow Co., Inc.,* 223 Cal.App.3d 1562, 273 Cal.Rptr. 302 (1990), decided after *Carreras,* alters the California law on this issue." *Id.* at 1090–91. The court noted that the language of *Savage* cited by amicus "is dictum, since the solicitation of donations was not at issue in that case." *Id.* at 1091. Therefore, the court followed *Carreras* and found that *Alternatives for California Women* stated the applicable test. *Id.* Consequently, the "Berkeley Solicitation Ordinance is facially invalid under the California Constitution [because] [i]t defines the scope of regulated conduct based upon the content of speech, that is, whether or not the speaker conveys the message of seeking contributions." *Id.*

Based on the above discussion, the Court finds the Ordinance at issue here invalid on its face. There is no question that the Ordinance purports to regulate only solicitation. As such, pursuant to *Carreras* and *Alternatives for California Women,* the Ordinance defines the scope of regulated conduct based on the content of speech, namely, whether the speaker conveys the message of seeking contributions. Thus, the Ordinance is unconstitutional under the California Constitution.[18]

### Conclusion

In sum, the Court finds, on the basis of the California Constitution, that the City may not prohibit solicitation at all times and in all areas of LAX and that the Ordinance is unconstitutional on its face. As a result, the Plaintiffs are likely to prevail on the merits of their claims. Since the right at issue pertains to freedom of speech, the Plaintiffs have demonstrated the possibility of irreparable harm. Therefore, the Application is granted and the Court will issue a preliminary injunction.

IT IS SO ORDERED.

---

**18.** In *Church of the Soldiers,* 886 F.Supp. at 726 n. 8, the court indicated that a ban on solicitation, although based on content, might nonetheless be constitutional provided the city could demonstrate that the ban was necessary to serve a compelling interest and was narrowly tailored accordingly. Assuming a ban on solicitation would be valid under California law if the City could show a compelling interest, the Court finds that the City has not shown such an interest here or, alternatively, that the Ordinance is not narrowly tailored to serve any such interest the City does have. Given the problems with solicitation identified by the City, it does not have a compelling interest in banning solicitation at all times and in all areas of the airport.