[No. F018818. Fifth Dist. Dec. 23, 1994.]

CITY OF FRESNO, Plaintiff, Cross-defendant and Respondent, v. PRESS COMMUNICATIONS, INC. et al., Defendants, Cross-complainants and Appellants.

**COUNSEL**

Wild, Carter, Tipton & Oliver, Kent C. Parr and Robert C. Schmalle for Defendants, Cross-complainants and Appellants.

James P. Lough, City Attorney, and Edwin A. Oeser, Assistant City Attorney, for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**STONE (W. A.), Acting P. J.**—In this appeal we are asked to decide whether the City of Fresno's municipal ordinance which restricts the door-to-door distribution of certain categories of written materials is constitutional. We are concerned with two parts of the ordinance. First, the ordinance prohibits-door-to-door distribution of advertisements and unauthorized newspapers when the owner or occupant of a residence or business has posted a sign prohibiting such distribution. Second, the ordinance prohibits door-to-door distribution of campaign materials, advertisements and unauthorized newspapers when it is reasonably apparent the previous day's distribution has not been removed or the property is vacant. We hold both

parts of the ordinance restrict the distribution of certain categories of protected speech and the press to the exclusion of other categories, and the City of Fresno failed to carry its burden of demonstrating a content-neutral justification for the disparate treatment.

BACKGROUND

Fresno Municipal Code section 8-808 provides:

"(a) The following definitions shall apply to the terms used in this section.

"(1) 'Advertisement' means any paper, bill, poster, notice, handbill, advertising card, advertising device, dodger or emblem which is used or intended as a notice of any article or merchandise for lease or sale; any trade, profession or business of any person for hire; or any show or exhibition for which an admission fee is charged, or which is used or intended to divert, draw off, turn or drive away patronage, customers, business or trade from any person. Advertisement does not include campaign material.

"(2) 'Advertiser' means any person upon whose orders or for whose benefit advertisements are printed and distributed.

"(3) 'Unauthorized newspaper' means any newspaper which is not delivered pursuant to subscription agreement or pursuant to the expressed consent of the owner or occupant of the business or residence.

"(4) 'Campaign material' means any matter used to promote the candidacy of any person running for public office or to support or to defeat of any initiative, referendum, or ballot measure.

"(b) No person shall distribute or cause to be distributed any advertisement or any unauthorized newspaper to any business or residence whenever a sign approved and distributed by the Chief of Police or his designated representative prohibiting such distribution is conspicuously posted on or near the entrance or front door to such premises.

"(c) No person shall distribute any advertisement, unauthorized newspaper or campaign material to any residence or business in the city where it is or should be apparent to a reasonable person that any previous day's distribution of any such material has not been removed or that the property is vacant."

Appellant, Mark Jackson, is president of Press Communications, Inc., which publishes Metronews,[1] a local newspaper with a weekly circulation of approximately 50,000 in the Fresno area. Jackson is also editor-in-chief of Metronews. Most of the newspaper's deliveries are not pursuant to subscription. Hence, at least for those who do not subscribe, Metronews is an "unauthorized newspaper" for purposes of Fresno Municipal Code section 8-808.

Independent carriers deliver Metronews. Pursuant to procedures developed by Metronews, carriers are instructed not to deliver to addresses of people who have notified Metronews they do not wish to receive the paper or where a sign is posted pursuant to Fresno Municipal Code section 8-808, subdivision (b). Carriers are provided with weekly lists and maps of residences or businesses which have informed Metronews they do not wish to receive the newspaper. They are subject to substantial reduction in their contract rate in the event of an unwanted delivery.

The City of Fresno filed a complaint against Jackson and Press Communications to enjoin them from causing distribution of unauthorized newspapers to posted residences and from violating Fresno Municipal Code section 8-808, subdivision (b). The complaint alleged Metronews repeatedly had caused unauthorized newspapers to be distributed in violation of the ordinance and threatened to continue such distribution. Metronews cross-complained alleging the ordinance was unconstitutional both on its face and as applied to the newspaper in this particular case, and seeking to enjoin its enforcement.

Metronews filed a motion for summary judgment on both the complaint and cross-complaint. Metronews submitted evidence regarding the procedures it used to avoid any violation of the ordinance. The trial court granted summary judgment in favor of Metronews on the city's complaint when the city failed to present any evidence to support its claim that Metronews violated the ordinance. The court denied summary judgment on the cross-complaint, finding that although the ordinance was facially valid, there were triable issues of material fact regarding its constitutionality as applied to Metronews. Copies of Metronews were not introduced into evidence and the court concluded it could not decide the issue as a matter of law because it could not determine whether the paper was "commercial speech or political speech."

Following a trial, the court issued its memorandum of decision in which it adopted the previous ruling that the ordinance was constitutional on its face

---

[1]We will refer to appellants collectively as "Metronews."

and found "no evidence that said regulation is unconstitutional as applied to Metronews." The court entered judgment in favor of the city and Metronews appealed.

DISCUSSION

I.

*Controlling Constitutional Principles*

The First Amendment to the Constitution of the United States provides, in part: "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." This prohibition is made applicable to state action by the due process clause of the Fourteenth Amendment. The California Constitution, article I, section 2, subdivision (a) likewise provides, in part: "A law may not restrain or abridge liberty of speech or press." **(1)** The protection afforded the press applies whether a newspaper is sold or given away (*Pittsburgh Press Co.* v. *Human Rel. Comm'n* (1973) 413 U.S. 376, 385 [37 L.Ed.2d 669, 676-677, 93 S.Ct. 2553]), and encompasses circulation and distribution as well as publication. (*Lovell* v. *Griffin* (1938) 303 U.S. 444, 452 [82 L.Ed. 949, 954, 58 S.Ct. 666].)

■   The guarantees provided in the First Amendment mean "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." (*Police Department of Chicago* v. *Mosley* (1972) 408 U.S. 92, 95 [33 L.Ed.2d 212, 216, 92 S.Ct. 2286].) The government may regulate the time, place and manner of speech (*Schneider* v. *State* (1939) 308 U.S. 147, 162 [84 L.Ed. 155, 165, 60 S.Ct. 146]; *Cantwell* v. *Connecticut* (1940) 310 U.S. 296, 304 [84 L.Ed. 1213, 1218, 60 S.Ct. 900, 128 A.L.R. 1352]), but time, place and manner regulations may not be based upon either the content or the subject matter of speech. (*Consolidated Edison Co.* v. *Public Serv. Comm'n* (1980) 447 U.S. 530, 535-536 [65 L.Ed.2d 319, 326-327, 100 S.Ct. 2326].) Thus, when a time, place and manner regulation is found to be facially content-based, the government has the burden of proving the restriction is justified without reference to the content of the regulated speech. (*Ward* v. *Rock Against Racism* (1989) 491 U.S. 781, 791 [105 L.Ed.2d 661, 675, 109 S.Ct. 2746].)

■   In the very strictest sense, this ordinance on its face does not restrict the distribution of unauthorized newspapers, advertisements or campaign materials because of what the publications may express in the way of ideas, editorials, or news. It is not an attempt to curb the expression of particular ideas by way of regulation. Rather the ordinance appears on its

face to be content-neutral to the extent the text of the publication is irrelevant to the restriction on distribution.

■ However, the concept of content-based invalidity also encompasses those regulations which distinguish between *types of speech*. For example, an ordinance which regulates the use of news racks by banning "commercial handbills" while allowing newspapers is a content-based ordinance. (*Cincinnati* v. *Discovery Network* (1993) __ U.S. __ [123 L.Ed.2d 99, 113 S.Ct. 1505].) A restriction which is limited in effect to persons engaged in door-to-door "peddling or soliciting" is content-based because it does not also apply to persons who go door-to-door merely looking for receptive listeners. (*Alternatives for California Women, Inc.* v. *County of Contra Costa* (1983) 145 Cal.App.3d 436, 448 [193 Cal.Rptr. 384].) A tax ordinance which applies to "general interest magazines" but not to newspapers or religious, professional, trade and sports journals or magazines printed or published within the state is content-based. (*Arkansas Writers' Project, Inc.* v. *Ragland* (1987) 481 U.S. 221, 229 [95 L.Ed.2d 209, 219-220, 107 S.Ct. 1722].)

Fresno Municipal Code section 8-808, subdivision (b) restricts the distribution of advertisements and unauthorized newspapers, while subdivision (c) adds campaign materials to the list of restricted publications. Neither restriction applies to religious publications, charitable publications or a myriad of other types of publications which may be delivered to a home or business.

■ Because its application depends upon the type of publication, the ordinance is clearly content-based. Absent a demonstrably content-neutral basis for selectively restricting the distribution of these publications to the exclusion of other categories of speech, the ordinance must be found invalid on its face. (*Cincinnati* v. *Discovery Network, supra,* __ U.S. at pp. __ [123 L.Ed.2d at pp. 115-116.].) We consider each subdivision separately.

## II.

*Municipal Code, Section 8-808, Subdivision (b)*

"No person shall distribute or cause to be distributed any *advertisement* or any *unauthorized newspaper* to any business or residence whenever a sign approved and distributed by the Chief of Police or his designated representative prohibiting such distribution is conspicuously posted on or near the entrance or front door to such premises." (Italics added.)

■ A city may prohibit a distributor from delivering written material to a home or business in defiance of the previously expressed will of the

occupant. (*Martin* v. *Struthers* (1943) 319 U.S. 141 [87 L.Ed. 1313, 63 S.Ct. 862]; *Van Nuys Pub. Co.* v. *City of Thousand Oaks* (1971) 5 Cal.3d 817, 825 [97 Cal.Rptr. 777, 489 P.2d 809].) The laws of this nation traditionally have respected the right of an occupant to bar hawkers, solicitors, peddlers and other unwanted visitors by order or notice. (*Rowan* v. *Post Office Dept.* (1970) 397 U.S. 728, 736-737 [25 L.Ed.2d 736, 742-743, 90 S.Ct. 1484].)

The question here is whether it is constitutionally permissible for the City of Fresno to lend its power to enforce such a prohibition only when *certain* categories of written publications are delivered in defiance of the occupant's previously expressed will.

The city argues the delivery of religious literature or campaign literature is properly exempt from this restriction because these categories of speech are entitled to a higher degree of protection under the Constitution. We assume this means the city believes it would be unconstitutional for it to lend its enforcement powers to protect the homeowner's right not to receive religious or campaign materials.[2] The city cites no direct authority for this proposition, nor does it cite authority to support the suggestion that newspapers are entitled to less protection under the First Amendment. Moreover, newspapers may contain religious commentary or a religious organization may publish and distribute a religious newspaper without subscription. Although advertisements may be entitled to less constitutional protection in some instances, there must still be a content-neutral justification for the ordinance. (*Cincinnati* v. *Discovery Network, supra,* __ U.S. at pp. __-__ [123 L.Ed.2d at pp. 115-116]; *Arkansas Writers' Project, Inc.* v. *Ragland, supra,* 481 U.S. 221.) Even a regulation which singles out "fighting words" is content-based and must have a content-neutral justification in order to pass constitutional muster. (See *R.A.V.* v. *St. Paul* (1992) 505 U.S. 377 [120 L.Ed.2d 305, 112 S.Ct. 2538].)

In ruling on the summary judgment motion, the court concluded the ordinance was necessary to further a compelling state interest, that it was "necessary to the vindication of the right of the local citizenry to be free from undesired advertisements and unauthorized newspapers." However, the court's reasoning fails to recognize the distinction between the private individual's right to decline delivery and the government's power to restrict delivery. The individual's right arguably may be absolute but the government's power is constrained by the First Amendment. (*Van Nuys Pub. Co.* v. *City of Thousand Oaks, supra,* 5 Cal.3d at pp. 827-828.)

---

[2]The city offers no explanation for according campaign materials a "higher degree of protection" in subdivision (b), while placing such materials in the same restricted category as advertisements and unauthorized newspapers in subdivision (c).

The possibility that speech may be "undesirable" or "unpopular" is not an acceptable basis for the government to curtail speech which is otherwise protected by the First Amendment. (See *Spence* v. *Washington* (1974) 418 U.S. 405, 412 [41 L.Ed.2d 842, 847-848, 94 S.Ct. 2727]; *Street* v. *New York* (1969) 394 U.S. 576, 592 [22 L.Ed.2d 572, 585, 89 S.Ct. 1354].) Furthermore, the trial court's reasoning is based upon an unproved assumption that advertisements and unsubscribed newspapers are universally less desirable and less popular than other types of written material (e.g., religious, political or charitable publications) that may be delivered to a home or business without the prior authorization of the occupant. Even assuming this could be shown, it requires a judgment based upon the relative value of the content of speech which is forbidden under the First Amendment. (*Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497, 504 [134 Cal.Rptr. 668, 556 P.2d 1119].)

The vice of Fresno Municipal Code section 8-808, subdivision (b) is that the selective application of the restriction is not justified by the asserted interest it seeks to protect. The right to privacy is no less invaded by the delivery of unwanted religious tracts than by the delivery of unsolicited advertisements or unauthorized newspapers.

Although the city may have the authority to prohibit the delivery of written material to a home or business in defiance of the previously expressed will of the occupant (*Martin* v. *Struthers, supra,* 319 U.S. 141; *Van Nuys Pub. Co.* v. *City of Thousand Oaks, supra,* 5 Cal.3d at p. 825), it does not have the authority to decide what categories of speech are more or less important or desirable and to use the government's enforcement power to restrict the distribution of these categories of written material.

### III.

*Municipal Code Section 8-808, Subdivision (c)*

"No person shall distribute any *advertisement, unauthorized newspaper* or *campaign material* to any residence or business in the city where it is or should be apparent to a reasonable person that any previous day's distribution of any such material has not been removed or that the property is vacant." (Italics added.)

■ The city claims this restriction is justified because of its interest in preventing crime and litter. However, reliance upon this abstractly content-neutral interest presumes advertisements and unauthorized newspapers contribute to these problems while other categories of written materials do not. The city offered no evidence to establish such a presumption.

The trial court concluded newspapers are different from other publications because they "go on and on." In other words, unauthorized newspapers

contribute to crime and litter and are more invasive of privacy than other publications because unauthorized newspapers are delivered more frequently. Again, no evidence was offered to support such a conclusion. In any event, the city did not offer this as its justification for excluding the myriad of other unauthorized or unsubscribed written materials from the prohibition.

We illustrate the point with this hypothetical example of the problems inherent in the application of Fresno Municipal Code section 8-808: a homeowner returning from a week-long holiday finds on the front lawn a religious tract, three newspapers, a political pamphlet, a leaflet soliciting a charitable contribution and a flyer advertising a concert. Even though (1) none of these materials was delivered pursuant to a subscription, (2) all are equally capable of being blown into the street, and (3) all indicate by their continued presence that no one is home, only the persons responsible for delivering the newspaper, the advertising flyer and possibly the political pamphlet are subject to prosecution or the threat of an injunction.

Aside from any other constitutional defect from which this ordinance may suffer, the city cannot establish a relationship between its asserted interests and the distinctions between categories of speech. Fresno Municipal Code section 8-808 is on its face a content-based restriction upon the distribution of protected speech and as such violates the First Amendment.[3]

## IV.

### *Attorney Fees*

Appellants seek attorney fees pursuant to Code of Civil Procedure section 1021.5. That section authorizes the court to award attorney fees if " '(1) plaintiffs' action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons" and (3) "the necessity and financial burden of private enforcement are such as to make the award appropriate." ' [Citation.]" (*Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 318 [193 Cal.Rptr. 900, 667 P.2d 704], fn. omitted.)

Whether a prevailing party is entitled to fees is a determination an appellate court, rather than the trial court, may make if the appellate court is convinced it is in a position to assess the propriety of such an award: "We

---

[3]Having determined the ordinance is invalid on its face, we need not address the issues raised by appellants regarding the application of the ordinance to their circumstances.

hold that a Court of Appeal is not required to remand to the trial court the question of whether to award fees under section 1021.5. The decision as to which court is better equipped to make the initial determination is a matter within the discretion of the Court of Appeal. . . ." (*Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 427 [253 Cal.Rptr. 426, 764 P.2d 278].)

■ Litigation which enforces constitutional rights necessarily affects the public interest and confers a significant benefit upon the general public. (*Press* v. *Lucky Stores, Inc., supra*, 34 Cal.3d at p. 318.) The remaining question is whether it was necessary for appellants to incur the financial burden of private enforcement in order to enforce this right.

It became necessary for appellants to litigate this matter because the city brought an action to enjoin claimed violations of the ordinance. Appellants were compelled to assert their First Amendment rights in order to defend their right to engage in protected activity. Even after judgment was entered against the city when it failed to present evidence to prove a violation of Fresno Municipal Code section 8-808, it was necessary for appellants to pursue declaratory relief to prevent the city from future legal action to enforce the ordinance. Appellants had little choice but to bear the cost of vindicating their rights as well as the rights of others whose protected activities are restricted by the terms of the unconstitutional ordinance.

Because all of the elements of Code of Civil Procedure section 1021.5 are satisfied, appellants are entitled to an award of attorney fees.

DISPOSITION

The judgment is reversed. The cause is remanded to the Superior Court of the County of Fresno for a determination of the amount of attorney fees to be awarded pursuant to Code of Civil Procedure section 1021.5. Costs on appeal are awarded to appellants.

Dibiaso, J., and Buckley, J., concurred.