**LOS ANGELES ALLIANCE FOR SURVIVAL, et al., Plaintiffs,**

v.

**CITY OF LOS ANGELES, et al., Defendants.**

**No. CV 97–6793 RAP (CTx).**

United States District Court, C.D. California.

Oct. 30, 1997.

James K. Hahn, City Atty., Frederick N. Merkin, Sr. Asst. City Atty., Byron R. Boeckman, Asst. City Atty., Debbie Lew, Deputy City Atty., Candice I. Horikawa, Deputy City Atty., Los Angeles, CA, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

PAEZ, District Judge.

### I.

### *Introduction*

Plaintiffs, the Los Angeles Alliance for Survival ("LAAS"), the Los Angeles Coalition to End Hunger and Homelessness ("LA-CEHH") and Jerry Rubin bring this civil rights action against the City of Los Angeles, Mayor Richard Riordan and Chief of Police Bernard Parks. Plaintiffs seek a declaration that the recently enacted Los Angeles City Ordinance No. 171664 [1] (the "Ordinance"), which prohibits "aggressive solicitation," violates (1) plaintiffs' free speech rights under the First Amendment to the United States Constitution, (2) plaintiffs' right to equal protection under the First and Fourteenth Amendments to the United States Constitution; and (3) plaintiffs' rights under the Liberty of Speech Clause, Art. 1, § 2 of the California Constitution. The Ordinance attempts to regulate aggressive solicitation in two ways. First, it is a violation of the Ordinance to solicit in an "aggressive" manner, as defined by the terms of the Ordinance. Second, the Ordinance restricts any solicitation in parking structures, near motor vehicles, in private restaurants, at public transportation stops and near automatic teller machines.

Pending before the Court is plaintiffs' motion for a preliminary injunction. Plaintiffs challenge the Ordinance on its face. Looking first to California law, plaintiffs contend the Ordinance makes an invalid content-based distinction between solicitation and other forms of protected speech; restricts speech in public fora without showing the speech is

Mark D. Rosenbaum, Peter J. Eliasberg, ACLU Foundation of Southern Cal., Los Angeles, CA, Carol Sobel, Carol A. Sobel Law Offices, Santa Monica, CA, for Plaintiffs.

1. A copy of the Ordinance is attached as Exhibit A.

incompatible with the intended uses of those fora; grants to both public officials and certain private persons unbridled discretion to determine who will be subject to penalties under the Ordinance; and rests on the faulty assumption that the government may restrict protected speech in order to protect its citizens' desire to be left alone in public fora. Defendants acknowledge that the California Constitution's Liberty of Speech Clause is more protective of speech than the First Amendment with respect to prior restraints and private property owners' attempts to restrict protected speech in modern public spaces such as shopping malls. Defendants contend, however, that the Liberty of Speech Clause and the First Amendment are coextensive in all other respects. Consequently, defendants urge the Court to apply First Amendment jurisprudence to resolve the distant motion. Upon consideration of the parties' moving, opposition and reply papers, and the oral arguments of counsel, plaintiffs' motion is **GRANTED.**

## II.

### *Factual Background*

On July 2, 1997, the Los Angeles City Council (the "Council") enacted Ordinance No. 171664 entitled "Prohibition Against Certain Forms of Aggressive Solicitation." Defendant Richard Riordan, the Mayor of Los Angeles, signed the Ordinance into law on July 15, 1997. The Ordinance took effect on August 15, 1997. Plaintiffs contend, and defendants do not dispute, that the City of Los Angeles (the "City") plans to begin enforcing the Ordinance shortly, upon issuance by the Chief of Police, defendant Bernard Parks, of a directive concerning enforcement strategies.

The stated purpose of the Ordinance is to improve "the quality of life and economic vitality of the City, and to protect the safety of the general public against certain abusive conduct of persons engaged in solicitation, by imposing reasonable manner and place restrictions on solicitation while respecting the constitutional rights of free speech for all citizens[.]" As the Council explained in the preamble, the goal of the Ordinance is "to protect citizens from the fear and intimidation accompanying certain kinds of solicitation that have become an unwelcome and overwhelming presence in the city." Specifically, the Council found that aggressive solicitation in Los Angeles has increased, disturbing and disrupting residents and businesses, contributing to the loss of access to and enjoyment of public places, and enhancing in residents a sense of fear, intimidation and disorder. The Council concluded that "aggressive panhandling usually includes approaching or following pedestrians, use of abusive language, unwanted physical contact, or the intentional blocking of pedestrian and vehicular traffic," and that "the presence of individuals who solicit money from persons at or near banks or automated teller machines is especially threatening and dangerous." In addition, the Council noted that motorists are confronted with persons washing their car windows without permission or offering to perform various services, including opening car doors or locating parking spaces, and that such activity "carries with it an implicit threat to both person and property."

In general, the Council found that solicitation is aggressive where the people solicited constitute a "captive audience" in that it is difficult for them to refuse to listen to the solicitor or avoid solicitation. The Council listed as examples of such places: buses, subways, trains, parking lots, parking structures, and indoor and outdoor dining areas. Restriction of solicitation in such locations, according to the Council's findings, will provide a balance between the rights of solicitors and the rights of persons wishing to decline such solicitations and "will help avoid or diminish the threat of violence in such unwanted and unavoidable confrontations."

A violation of the Ordinance is punishable as a misdemeanor or infraction. § 41.59(d). The Ordinance takes a two-fold approach, barring all solicitation performed in a certain manner and restricting solicitation of any type in certain specified locations. First, the Ordinance prohibits soliciting, asking or begging "in an aggressive manner" in any public

place.[2] § 41.59(b)(1). The Ordinance defines "solicit, ask or beg" to include "using the spoken, written, or printed word, or bodily gestures, signs or other means with the purpose of obtaining an immediate donation of money or other thing of value or soliciting the sale of goods or services." § 41.59(a)(1). An "aggressive manner" is defined, in the context of solicitation, to mean (A) approaching, speaking to or following a person "if that conduct is intended or is likely to cause a reasonable person to (i) fear bodily harm to oneself or to another, damage to or loss of property, or (ii) otherwise be intimidated into giving money or other thing of value;" (B) intentionally touching a person or an occupied vehicle without consent; (C) intentionally blocking or interfering with a pedestrian or vehicle's safe passage; (D) using violent or threatening gestures; (E) following closely or approaching a person after being told by the person solicited that she or he does not want to be solicited or to give money or any other thing of value to the solicitor; or (F) using profane, offensive or abusive language that is inherently likely to provoke an immediate violent reaction. § 41.59(b)(2). In other words, the Ordinance prohibits any solicitation where it is done in conjunction with any of the foregoing conduct.

In addition, the Ordinance prohibits all solicitation at certain locations, subject to a series of exemptions. First, the Ordinance bars solicitation within 15 feet of the entrance or exit to a bank, savings and loan association, credit union or check cashing business; within 15 feet of an automated teller machine ("ATM") or the entrance to an enclosure containing an ATM; or within an ATM facility where a reasonable person should know he or she does not have permission to solicit. § 41.59(c)(1). However, "the lawful vending of goods and services within such areas" is permitted. *Id.* Moreover, the Ordinance exempts an unenclosed ATM located within a building, structure or space the primary function of which is unrelated to banking activities, provided the ATM is only

available for use during the regular hours of operation of the building. § 41.59(c)(1)(B).

Second, the Ordinance makes it a violation to approach an occupant of a motor vehicle for the purpose of soliciting when the vehicle is located in a public place. § 41.59(c)(2)(A). In addition, solicitation in a public parking lot or structure is banned from one-half hour after sunset until one-half hour before sunrise. § 41.59(c)(2)(B). The provisions concerning motor vehicles and parking structures do not apply, however, to solicitations relating to lawful towing of a vehicle or emergency repair requests.

Third, a person violates the Ordinance by soliciting in any public transportation vehicle, or within 10 feet of a designated or posted public transit stop *if* (i) the person remains there after being asked to leave by the owner, driver, or operator of a public transportation vehicle; the owner or manager of such a vehicle or his or her agent; a member of security force employed by the public transportation facility; or a peace officer; or (ii) within the preceding 30 days, the person engaged in solicitation at that location and was asked to leave by one of the people authorized in subsection (i) to make such a request. 41.59(c)(3)(A) and (B). The latter subsection is not violated if the person is expressly authorized to solicit at the location by one of the persons designated in subsection (i).

Finally, a person violates the Ordinance by soliciting in an outdoor or indoor dining area of a restaurant or other establishment serving food if (i) he or she remains after being asked to leave by the owner, manager or supervisor, or one of their agents; a member of a security force employed by the restaurant or a peace officer; or (ii) in the preceding 30 days, the person has been ask to leave the location by one of the specified individuals. § 41.59(c)(4)(A) and (3). As with the public transportation vehicle stops, the restaurant limitation does not apply where one of the specified persons grants the solicitor

---

**2.** A public place means "a place to which the public or a substantial group of persons has access," including, without limitation, "any street, highway, sidewalk, parking lot, plaza, transportation facility, school, place of amuse-

ment, park, playground, and any doorway, entrance, hallway, lobby and any other portion of any business establishment, an apartment house or hotel not constituting a room or apartment designed for actual residence." § 41.59(a)(2).

824

express authorization to solicit at the location.

The Ordinance also contains severability and non-exclusivity clauses.

Plaintiffs are two Los Angeles organizations and an individual who regularly solicit support from the public for their political and social causes. The Los Angeles Coalition to End Hunger and Homelessness ("Coalition") seeks to address problems related to homelessness in Los Angeles, in part by sponsoring the newspaper "Making Change," which is written, produced and distributed by homeless people in Los Angeles in exchange for solicited donations. Jerry Rubin is an individual organizer for and the director of the Los Angeles Alliance for Survival ("Alliance"), a grassroots organization committed to peace and environmental issues. Rubin states in his declaration in support of the motion that he regularly approaches members of the public to obtain signatures on petitions and "solicit donations in exchange for bumper stickers and other paraphernalia which contains political messages on environmental issues, peace issues, human rights issues, women's issues, health issues and other areas of progressive social concern." Rubin Decl., ¶ 3. Rubin states that he intends to continue engaging in conduct and speech that appears to violate the Ordinance and that he fears reprisal for participation in what he contends is protected speech. *Id.*, ¶¶ 6–7.

## III.

### *Discussion*

### A. Pullman Abstention

 Under the Pullman abstention doctrine, a federal court may postpone the decision to exercise jurisdiction over a case that presents a federal constitutional issue if adjudication of the issue could be avoided, or if the constitutional question could be narrowed, by a state court ruling on an uncertain question of state law. *Pearl Investment Co. v. City and County of San Francisco,* 774 F.2d 1460, 1462 (9thCir.1985) (citing, inter alia, *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1243, 47 L.Ed.2d 483 (1976);

*Railroad Commission of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)). With a few exceptions not applicable here, Pullman abstention is only available where:

(1) The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open.

(2) Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.

(3) The possibly determinative issue of state law is doubtful.

*Sinclair Oil Corp. v. County of Santa Barbara,* 96 F.3d 401, 409 (9th Cir.1996). An issue of state law is "doubtful" or "unclear" for purposes of Pullman abstention if "a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law." *Pearl,* 774 F.2d at 1464. "Resolution of an issue of state law might be uncertain because the particular statute is ambiguous, or because the precedents conflict, or because the question is novel and of sufficient importance that it ought to be addressed first by a state court." *Id.*

 In additional to the strictures of the three-prong test under *Pullman,* the Ninth Circuit has made it clear that because "[t]he doctrine of abstention ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy," reliance on the doctrine is justified only "where the order to parties to repair to the state court would clearly serve an important countervailing interest." *Canton v. Spokane School Dist. No. 81,* 498 F.2d 840, 845 (9th Cir.1974). Thus, courts should abstain under *Pullman* only "where principles of comity and federalism justify postponing the exercise of jurisdiction that Congress conferred upon federal courts." *Pearl,* 774 F.2d at 1462.

Moreover, "cases involving vital questions of civil rights are the least likely candidates for abstention." *Canton,* 498 F.2d at 846. In fact, the Supreme Court has repeatedly noted its "reluctance to abstain in cases involving facial challenges based on the First

Amendment" because forcing a plaintiff "to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he [or she] seeks to protect." *Houston v. Hill*, 482 U.S. 451, 467–68, 107 S.Ct. 2502, 2512–13, 96 L.Ed.2d 398 (1987); *see also Pearl*, 774 F.2d at 1463 ("Federal courts should be reluctant to abstain in civil rights cases regardless of the type of constitutional interest at stake; abstention can delay the redress of significant constitutional wrongs.... Nevertheless, abstention may be proper in civil rights cases to avoid unnecessary interference with an important state program."); *Sable Communications of California Inc. v. California Public Utilities*, 890 F.2d 184, 190–91 (9th Cir.1989) ("district court correctly rejected Pullman abstention as 'inappropriate' where First Amendment rights are implicated").

■ In *Sable*, the Ninth Circuit reiterated its earlier statement that Pullman abstention is almost never appropriate in first amendment cases because of the strong federal interests at stake and because of the potential that abstention would result in suppression of free speech. *Sable*, 890 F.2d at 191 (quoting *Playtime Theaters, Inc. v. City of Renton*, 748 F.2d 527, 532 (9th Cir.1984), *rev. on other grounds*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)). Nonetheless, where the danger of chilling protected speech is absent, the preference against abstention is not applicable and the standard tripartite abstention test applies. *Almodovar v. Reiner*, 832 F.2d 1138, 1140 (9th Cir.1987) (finding preference inapplicable where other parties were already presenting unclear state law issue to the California Supreme Court and that court's determination that the statutory scheme in question did not apply to films would make federal question moot).

■ Here, if the Court abstains from exercising jurisdiction in order to allow adjudication of the California Constitutional issues to proceed in the state courts, plaintiffs face the danger that their speech will be chilled by implementation of the Ordinance. Consequently, defendants' reliance on *Almodovar* is inapposite, and the Court is, perforce, reluctant to abstain. In addition, although this case involves a sensitive area of social policy and adjudication of the federal constitutional questions presented may be limited or obviated by resolution of state constitutional issues, the state law at issue here is not unclear. "An outcome is not 'doubtful' or 'uncertain' just because it turns on the facts of the particular case." *Pearl*, 774 F.2d at 1464. As the Court explains in detail below, the scope of California's Liberty of Speech Clause has been delineated by California appellate courts, and the Ninth Circuit, which this Court is bound to follow, has applied the Liberty of Speech Clause in a similar case. *See Carreras v. City of Anaheim*, 768 F.2d 1039, 1043 n. 5 (9th Cir.1985) (holding Pullman abstention inappropriate because there is no substantial uncertainty as to the meaning of the California Liberty of Speech Clause when applied to action challenging city ordinance regulating solicitation). In short, because the Ordinance challenged here is not ambiguous and because the controlling precedents do not conflict, this case does not present an unclear issue of state law, and Pullman abstention is inappropriate. *See Pearl*, 774 F.2d at 1464.

## B. Standard for Preliminary Injunction

In the Ninth Circuit, a party may obtain preliminary injunctive relief by satisfying one of two tests. The traditional test requires "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest[.]" *Johnson v. California State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir.1995). Under the so-called "alternative test," a party seeking a preliminary injunction must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir.1994).

■ Taken together, the two tests reflect "a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *MAI Systems*

*Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 516 (9th Cir.1993) (citations and internal quotation marks omitted). Under either test, the moving party must show, as an irreducible minimum, that there is a fair chance of success on the merits. *Stanley,* 13 F.3d at 1319. Likewise, "[u]nder either formulation of the test, the party seeking the injunction must demonstrate that it will be exposed to some significant risk of irreparable injury." *Associated General Contractors v. Coalition for Economic Equity,* 950 F.2d 1401, 1410 (9th Cir.1991) "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *accord American–Arab Anti–Discrimination Committee v. Reno,* 70 F.3d 1045, 1058 (9th Cir.1995).

## C. Plaintiffs' Standing to Bring Facial Challenge

■ Defendants do not challenge plaintiffs' standing to bring a facial challenge to the Ordinance. Nonetheless, standing is a jurisdictional issue properly considered by the Court on its own initiative. Plaintiffs allege that they have engaged and intend to engage in the future in activities prohibited or restrained by the Ordinance. More significantly, plaintiffs assert that they are entitled to challenge the Ordinance on its face for overbreadth. In overbreadth cases, litigants are permitted to challenge a statute on its face, rather than as applied to the individual plaintiffs, because of "the possibility that protected speech or associative activities may be inhibited by the overly broad reach of the statute." *NMI Perry v. Los Angeles Police Dep't,* 121 F.3d 1365, 1368 (9th Cir.1997) (quoting *Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980)). Because plaintiffs contend the Ordinance is overbroad, they may attack the Ordinance based on its impact, not only on their own expressive activities, but on the expressive activities of parties not before the court. *Id.* In other words, plaintiffs have standing to challenge the Ordinance on its face.

## D. Avoiding Federal Constitutional Issues

■ Federal courts are required to avoid resolution of federal constitutional claims when alternative state law is available to resolve the dispute. *Vernon v. City of Los Angeles,* 27 F.3d 1385, 1391–92 (9th Cir. 1994), "Where the state constitutional provisions are co-extensive with related federal constitutional provisions, we may decide the federal constitutional claims because that analysis will also decide the state constitutional claims. [Citation]. However, where the state provisions offer more expansive protection than the federal constitution, we must address the state constitutional claims in order to avoid unnecessary consideration of the federal constitutional claims." *Id.; see also Carpenter v. City and County of San Francisco,* 93 F.3d 627, 629 (9th Cir.1996) (looking to California Constitution rather than federal constitution to resolve issue concerning free exercise of religion), *cert. denied,* —— U.S. ——, 117 S.Ct. 1250, 137 L.Ed.2d 331 (1997).

■ Although defendants argue the First Amendment and the Liberty of Speech Clause are co-extensive for purposes of this action, they provide no authority for their contention that the expanded protection under the Liberty of Speech Clause is expressly limited to cases concerning prior restraints or speech in public spaces that are privately owned. *See* Memorandum of Points and Authorities in Opposition to Motion for Preliminary Injunction at 20. In fact, California authority is to the contrary. "As a general matter, the liberty of speech clause in the California Constitution is more protective of speech than its federal counterpart." *Griset v. Fair Political Practices Comm'n,* 8 Cal.4th 851, 866 n. 5, 35 Cal.Rptr.2d 659, 884 P.2d 116 (1994), quoted in *Church of the Soldiers of the Cross of Christ of the State of California v. City of Riverside,* 886 F.Supp. 721, 724 (C.D.Cal.1995); *see also, Carreras,* 768 F.2d at 1047 n. 7; *Wilson v. Superior Court,* 13 Cal.3d 652, 658, 119 Cal.Rptr. 468, 532 P.2d 116 (1975) (Liberty of Speech Clause is "more definitive and inclusive than the First Amendment"); *Robins v. Pruneyard Shopping Center,* 23 Cal.3d 899, 908, 153 Cal.Rptr.

854, 592 P.2d 341 (1979), *aff'd sub nom.*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); *International Society for Krishna Consciousness of California, Inc. v. City of Los Angeles,* 966 F.Supp. 956, 959 (C.D.Cal. 1997) (*ISKCON of California* ). Defendants specifically contend that analysis of time, place and manner restrictions under the Liberty of Speech Clause follows established First Amendment analysis. At least with respect to the issue of content-neutrality in the regulation of solicitation, the cases discussed below suggest otherwise. Because the Court finds plaintiffs have demonstrated a likelihood of success on the merits based on their argument that the Ordinance is a content-based regulation of speech protected by the Liberty of Speech Clause, the Court need not address the propriety of time, place and manner restrictions at this time. California law is sufficient to resolve the issues presented on the pending motion.

## E. Public Forum Analysis Under California Law: The Basic Incompatibility Test

■ At the outset, the Court notes that solicitation is protected speech under both the California Constitution and the First Amendment. *ISKCON of California,* 966 F.Supp. at 962 (citing *People v. Fogelson,* 21 Cal.3d 158, 165, 145 Cal.Rptr. 542, 577 P.2d 677 (1978)); *Hillman v. Britton,* 111 Cal. App.3d 810, 816, 168 Cal.Rptr. 852 (1980); and *International Society for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 677, 112 S.Ct. 2701, 2704, 120 L.Ed.2d 541 (1992)). Defendants do not dispute that fact, but argue that threats and intimidation are not protected speech. Were the Ordinance limited to restrictions of threatening and intimidating behavior (without reference to the content of the threatening speech), defendants might be correct that it does not implicate free speech concerns. However, the Ordinance clearly restricts itself to regulation of threats and intimidation in conjunction with solicitation, raising concerns of both under and over-inclusiveness.[3]

■ The California Constitution, Art. 1, § 2, provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the · abuse of this right. A law may not restrain or abridge liberty of speech or press." Summarizing California law set forth *In re Hoffman,* 67 Cal.2d 845, 64 Cal. Rptr. 97, 434 P.2d 353 (1967); *Robins,* 23 Cal.3d at 909, 153 Cal.Rptr. 854, 592 P.2d 341; *Prisoners Union v. California Department of Corrections,* 135 Cal.App.3d 930, 185 Cal.Rptr. 634 (1982); and *University California Nuclear Weapons Labs Conversion Project v. Lawrence Livermore Laboratory,* 154 Cal.App.3d 1157, 201 Cal.Rptr. 837 (1984), the Ninth Circuit held in *Carreras* that under the Liberty of Speech Clause in the California Constitution, "the 'public forum' doctrine is not limited to traditional public forums such as streets, sidewalks, and parks.... Rather, the test under California law is whether the communicative activity 'is basically incompatible with the normal activity of a particular place at a particular time.'" *Carreras,* 768 F.2d at 1045 (quoting *Prisoners Union,* 135 Cal.App.3d at 939, 185 Cal. Rptr. .634).

Plaintiffs rely on a series of California and Ninth Circuit cases establishing the contours of the so-called "incompatibility test." In *Hoffman,* the California Supreme Court found a municipal ordinance restricting leafleting in Union Station in Los Angeles was unconstitutional because it abridged speech and associated conduct that did not interfere with the intended use of the railroad station. *Hoffman,* 67 Cal.2d at 851, 64 Cal.Rptr. 97, 434 P.2d 353 ("[T]he test is not whether petitioners' use of the station was a railway use but whether it interfered with that use,"). In *Robins,* the California Supreme Court reiterated that California's Liberty of Speech Clause contains a "protective provision more definitive and inclusive than the First Amendment," *Wilson,* 13 Cal.3d at 658, 119 Cal.Rptr. 468, 532 P.2d 116, and clarified that *Hoffman* was decided under the California

---

**3.** The Ordinance is probably underinclusive in that it covers only solicitation rather than all speech at specified locations. It is probably overinclusive (overbroad) because it covers solicita-

tion that does not present the dangers to which the Council responded when it enacted the Ordinance.

Constitution rather than the First Amendment. *Robins*, 23 Cal.3d at 909, 153 Cal. Rptr. 854, 592 P.2d 341; *see also, Carreras*, 768 F.2d at 1044 n. 8 (holding *Robins* "made it clear that *Hoffman* rested on California law.").[4]

In *Carreras*, the Ninth Circuit applied the incompatibility test to an ordinance regulating solicitation.[5] The court invalidated the ordinance, which restricted solicitation at Anaheim's Stadium and Convention Center, holding that solicitation was not incompatible with the uses of the exterior areas of the stadium or the exterior walkways of the convention center. *Carreras*, 768 F.2d at 1043. Following *Carreras* and invalidating an ordinance that prohibited solicitation at Los Angeles International Airport, Judge Davies of this District recently explained California's public forum test as follows:

> Put another way, under California law . . . locations where the public is free to come and go must be open to expressive activity unless the activity is basically incompatible with the primary use of the facility. Moreover, the burden of establishing basic incompatibility is clearly on the [d]efendants.

*ISKCON of California*, 966 F.Supp. at 964 (quoting and following *Carreras* and invalidating ordinance restricting solicitation at LAX) (internal citations, brackets and ellipses omitted).

■■■■■ Here, defendants concede that the Ordinance applies exclusively to public fora, with the exception of provisions regarding privately owned restaurants. Consequently, the Court need only apply the incompatibility test to the restrictions on solicitation in restaurants. Restaurants are held open to the public, and speech and related conduct in such locations are pro-

tected under the Liberty of Speech Clause so long as they are not basically incompatible with the normal activities of the forum. As the Ninth Circuit stated in *Carreras*. "[a]nnoyance and inconvenience . . . are a small price to pay for preservation of our most cherished right." *Carreras*, 768 F.2d at 1046 (citing *Wirta v. Alameda–Contra Costa Transit District*, 68 Cal.2d 51, 62, 64 Cal.Rptr. 430, 434 P.2d 982 (1967)). If conduct associated with solicitation in restaurants rises to the level of fraud, threats or physical intrusion, that conduct may be dealt with through narrowly tailored rules and security precautions. *Id.*; *see also ISKCON of California*, 966 F.Supp. at 967 (holding Los Angeles may pass and enforce laws restricting "bad conduct" of solicitors because conduct such as fraud is not protected speech). Defendants have presented no evidence at this juncture to support the conclusion that solicitation in restaurants covered by the Ordinance presents a basic incompatibility with the normal activities of those fora. Consequently, defendants have failed to satisfy their burden of proving that the regulated speech is basically incompatible with the normal activities of the various fora at issue.

In fact, defendants have not satisfied even the more restrictive test applied in *H–CHH Associates v. Citizens for Representative Government*, 193 Cal.App.3d 1193, 1207, 238 Cal.Rptr. 841 (1987), upon which they rely. There, the court held a privately-owned shopping center could entirely prohibit solicitation of political contributions on grounds that such activity would interfere with the conduct of business or the use of the properties at issue; impede the movement of customers or business tenants; block access to

---

4. In *Prisoners Union*, the appellate court applied the same test to a challenge by a prisoners' rights organization and concluded that the state had failed to prove that the normal activities of the prison could not be protected by less restrictive time, place and manner regulations. *Prisoners Union*, 135 Cal.App.3d at 938–39, 185 Cal.Rptr. 634. Consequently, the court held the prohibition of expressive activity in the prison parking lot violated the Liberty of Speech Clause. *Id.* Likewise, in *U.C. Nuclear Weapons Labs*, a California appellate court noted that in determining whether a particular location is a public forum for purposes of protection under the Liberty of

Speech Clause, California courts have adopted the "basic incompatibility" test. *U.C. Nuclear Weapons Labs*, 154 Cal.App.3d at 1164, 201 Cal. Rptr. 837.

5. Despite defendants' protestations, this Court is bound by the Ninth Circuit's decision in *Carreras*. As plaintiffs noted at the hearing, no controlling authority since *Carreras* has undermined the Ninth Circuit's predictions concerning the California Supreme Court's interpretation of California law.

facilities or businesses; be noisy and disruptive; and entail harassment of patrons. *Id.* at 1208, 1221, 238 Cal.Rptr. 841. On the present record, defendants have not shown such a level of interference.[6]

Because defendants have failed to satisfy their burden of showing interference, plaintiffs have shown a likelihood of success with respect to their contention that, under the California Constitution, the Ordinance restricts protected speech in public fora.

### F. Time, Place and Manner Restrictions

 Although California applies broader protection of speech in certain respects, it appears that California assesses the validity of time, place and manner restrictions under the familiar federal constitutional standards. *Savage v. Trammell Crow Co., Inc.*, 223 Cal.App.3d 1562, 1572, 273 Cal. Rptr. 302 (1990). Thus, "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, ... are narrowly tailored to serve a significant government interest, and ... leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 790, 109 S.Ct. 2746, 2752, 105 L.Ed.2d 661 (1989) (quoting *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3068, 82 L.Ed.2d 221 (1984)).

### G. Content-Based Restriction of Protected Speech

 Here, the Court need go no further than the first prong of the traditional test for determining the validity of time, place and manner restrictions. In order to determine what constitutes an invalid content-based restriction, we look to California law. "Although the California Supreme Court has never addressed whether regulation directed solely at the solicitation of money violates the California Liberty of Speech Clause, the Ninth Circuit adopted the holding of *Alternatives for California Women* as the law of California regarding this issue in *Carreras* [.]" *ISKCON of California*, 966 F.Supp. at 969.[7] Applying the California Constitution, the appellate court in *Alternatives for California Women* found an ordinance restricting solicitation invalid on its face because it "embodie[d] a content-based discrimination between categories of speech in that it distinguishe[d] between speech merely conveying information on the one hand and speech conveying information in conjunction with a request for funds on the other." *Alternatives for California Women*, 145 Cal.App.3d at 450, 193 Cal.Rptr. 384 (internal quotation marks omitted). The court explained that

> Time, place and manner restrictions must be applicable to all speech without regard to content.[ ] The challenged ordinance permits unlimited access by persons who wish to approach residents about random subjects, but it does not do this for persons or organizations soliciting funds (such as ACW). The ordinance discriminates on the basis of the content of a speaker's message to the extent that a person who literally solicits from residents is regulated but one who seeks only a receptive listener is not. This disparity has the effect of making the ordinance constitutionally deficient.

*Id.*, quoted in *Carreras*, 768 F.2d at 1048 (explaining in footnote that *Alternatives for California Women* is most plausibly interpreted as independently grounded on the California Liberty of Speech Clause). Likewise, in *Carreras*, the Ninth Circuit conclud-

---

6. Furthermore, although *private property owners* may establish reasonable time, place and manner restrictions on property they have opened to the public, it is far from clear *that the government* may restrict protected speech on private property. Cf. *Smith v. Silvey*, 149 Cal.App.3d 400, 406, 197 Cal.Rptr. 15 (1983) ("The burden of restricting the 'house-to-house distribution of ideas' falls on the homeowner; that is, no governmentally imposed restriction should occur until after the caller has been warned by the householder that the latter does not want to be disturbed."). That, however, is a question for another day.

7. Defendants contend *Carreras* and its progeny in the district courts were wrongly decided, but this Court is not free to question controlling Ninth Circuit authority in the absence of direction from the California Supreme Court indicating that the Ninth Circuit wrongly predicted that court's decision on the issue.

ed the ordinance at issue there "worked an impermissible content discrimination by singling out for regulation speech that involve[d] soliciting donations." *Carreras,* 768 F.2d at 1048.

Three district courts applying California law have followed *Carreras.* In *Church of the Soldiers,* Judge Baird of this District granted the plaintiffs' motion for summary judgment, finding that the City of Riverside's ordinance prohibiting aggressive and false or misleading solicitation in certain manners and in certain locations violated the Liberty of Speech Clause of the California Constitution. *Church of the Soldiers.,* 886 F.Supp. at 726 (following *Carreras* and *Alternatives for California Women* ). In *Berkeley Community Health Project v. City of Berkeley,* 902 F.Supp. 1084, 1091 (N.D.Cal.1995), Judge Wilken of the Northern District of California granted a preliminary injunction with respect to a municipal ordinance regulating solicitation performed in an aggressive manner, from a person entering or exiting an automobile, within 10 feet of an automatic teller machine, within six feet of a building fronting a right of way in a commercial zone, or after dark. *Id.* Following *Carreras,* Judge Wilkin concluded plaintiffs were likely to prevail on the merits with respect to their claim that the solicitation ordinance was invalid because the ordinance regulated conduct on the basis of the content of the message, namely whether the message concerned seeking contributions or not. *Id.* Most recently, Judge Davies of this District granted a preliminary injunction barring enforcement of an ordinance prohibiting solicitation and receipt of funds near the Los Angeles Airport on grounds that the ordinance was invalid on its face as a content-based regulation, making plaintiffs likely to prevail on the merits of their claims. *ISKCON of California,* 966 F.Supp. at 970.

Finally, in *City of Fresno v. Press Communications, Inc.,* 31 Cal.App.4th 32, 40, 36 Cal.Rptr.2d 456 (1994), a California appellate court held an ordinance prohibiting distribution of advertisements, unauthorized newspapers and campaign materials in certain circumstances was invalid because its application depended on the content of the material. For example, religious and charitable publications were not included in the list of publications restricted. *Id.* In holding the ordinance invalid on its face, the court reiterated that "[a] restriction which is limited in effect to persons engaged in door-to-door 'peddling or soliciting' is content-based because it does not also apply to persons who go door-to-door merely looking for receptive listeners." *Id.* (quoting *Alternatives for California Women,* 145 Cal.App.3d at 448, 193 Cal.Rptr. 384).

In short, this Court is bound by the Ninth Circuit's prediction in *Carreras* that the California Supreme Court would adopt the reasoning of *Alternatives for California Women* if it were faced with a similar question concerning the content-neutrality of an ordinance restricting solicitation. Consequently, plaintiffs have shown a likelihood of success on the merits with respect to their contention that the Ordinance is invalid on its face because it "embodies a content-based discrimination between categories of speech in that it distinguishes between speech merely conveying information on the one hand and speech conveying information in conjunction with a request for funds on the other." *Cf. Alternatives for California Women,* 145 Cal.App.3d at 450, 193 Cal.Rptr. 384 (internal quotation marks omitted).

## IV.

### *Conclusion*

The Court declines to abstain under the *Pullman* doctrine. Although the case involves sensitive issues of social policy and although adjudication of issues under the California Constitution may obviate the necessity of reaching the federal constitutional questions, California law in this area is not unclear within the meaning of the doctrine; and Pullman abstention is disfavored where free speech rights are at issue.

With respect to the substantive issues presented, defendants do not dispute plaintiffs' contention that the balance of hardships tips sharply in plaintiffs' favor and that plaintiffs will be irreparably injured absent the issuance of a preliminary injunction. For the reasons set forth above, the Court concludes

that plaintiffs are likely to succeed on the merits because the Ordinance embodies a content-based discrimination between speech conveying information and speech conveying information in conjunction with a request for funds. Consequently, plaintiffs' motion is granted and defendants are enjoined from enforcing the Ordinance pending resolution of this action on the merits.

**IT IS SO ORDERED**

Exhibit A

ORDINANCE NO. 171664

An ordinance adding section 41.59 to Article I of Chapter IV of the Los Angeles Municipal Code to prohibit aggressive soliciting.

WHEREAS, it is the intent of the Council in enacting this Ordinance to improve the quality of life and economic vitality of the City, and to protect the safety of the general public against certain abusive conduct of persons engaged in solicitation, by imposing reasonable manner and place restrictions on solicitation while respecting the constitutional rights of free speech for all citizens, and

WHEREAS, the Council finds that an increase in aggressive solicitation throughout the city has become extremely disturbing and disruptive to residents and businesses, and has contributed not only to the loss of access to and enjoyment of public places, but also to an enhanced sense of fear, intimidation and disorder, and

WHEREAS, aggressive panhandling usually includes approaching or following pedestrians, the use of abusive language, unwanted physical contact, or the intentional blocking of pedestrian and vehicular traffic. The Council further finds that the presence of individuals who solicit money from persons at or near banks or automated teller machines is especially threatening and dangerous. Motorists also find themselves confronted by persons who without permission wash their automobile windows at traffic intersections, despite explicit indications by drivers not to do so. Such activity often carries with it an implicit threat to both person and property. People driving or parking on city streets frequently find themselves faced with pan-handlers seeking money by offering to perform "services" such as opening car doors or locating parking spaces, and

WHEREAS, the Council further finds as abusive the solicitation of people in places where they are a "captive audience" in which it is impossible or difficult for them to exercise their own right to decline to listen to or to avoid solicitation from others. Such places include buses, subways, and trains; parking lots and structures; and indoor and outdoor dining areas. Restricting solicitation in such places will provide a balance between the rights of solicitors and the rights of persons who wish to decline or avoid such solicitations, and will help avoid or diminish the threat of violence in such unwarranted and unavoidable confrontations, and

WHEREAS, this law is timely and appropriate because current laws and city regulations are insufficient to address the aforementioned problems. The restrictions contained herein are neither overbroad nor vague and are narrowly tailored to serve a substantial governmental interest. Furthermore, in enacting this legislation, the Council recognizes the availability of community service and other sentencing alternatives, which may be appropriate remedies for violations of this law. The goal of this law is to protect citizens from the fear and intimidation accompanying certain kinds of solicitation that have become an unwelcome and overwhelming presence in the city.

NOW THEREFORE,

**THE PEOPLE OF THE CITY OF LOS ANGELES DO ORDAIN AS FOLLOWS:**

Section 1. Chapter IV of the Los Angeles Municipal Code is hereby amended by adding a new Section 41.59 thereto, to read as follows:

**SEC. 41.59. PROHIBITION AGAINST CERTAIN FORMS OF AGGRESSIVE SOLICITATION.**

(a) **Definitions.** For purposes of this section:

(1) "Solicit, ask or beg" shall include using the spoken, written, or printed word,

or bodily gestures, signs or other means with the purpose of obtaining an immediate donation of money or other thing of value or soliciting the sale of goods or services.

(2) "Public place" shall mean a place to which the public or a substantial group of persons has access, and includes, but is not limited to, any street, highway, sidewalk, parking lot, plaza, transportation facility, school, place of amusement, park, playground, and any doorway, entrance, hallway, lobby and other portion of any business establishment, an apartment house or hotel not constituting a room or apartment designed for actual residence.

**(b) Aggressive Solicitation prohibited.**

(1) No person shall solicit, ask or beg in an aggressive manner in any public place.

(2) "Aggressive manner" shall mean any of the following:

(A) Approaching or speaking to a person, or following a person before, during or after soliciting, asking or begging, if that conduct is intended or is likely to cause a reasonable person to (i) fear bodily harm to oneself or to another, damage to or loss of property, or (ii) otherwise be intimidated into giving money or other thing of value;

(B) Intentionally touching or causing physical contact with another person or an occupied vehicle without that person's consent in the course of soliciting, asking or begging;

(C) Intentionally blocking or interfering with the safe or free passage of a pedestrian or vehicle by any means, including unreasonably causing a pedestrian or vehicle operator to take evasive action to avoid physical contact;

(D) Using violent or threatening gestures toward a person solicited either before, during, or after soliciting, asking or begging;

(E) Persisting in closely following or approaching a person, after the person solicited has been solicited and informed the solicitor by words or conduct that such person does not want to be solicited or does not want to give money or any other thing of value to the solicitor; or

(F) Using profane, offensive or abusive language which is inherently likely to provoke an immediate violent reaction, either before, during, or after solicitation.

**(c) All solicitation prohibited at specified locations.**

(1) Banks and ATMs. No person shall solicit, ask or beg within 15 feet of any entrance or exit of any bank, savings and loan association, credit union, or check cashing business during its business hours or within 15 feet of any automated teller machine during the time it is available for customers' use. Provided, however, that when an automated teller machine is located within an automated teller machine facility, such distance shall be measured from the entrance or exit of the automated teller machine facility. Provided further that no person shall solicit, ask or beg within an automated teller machine facility where a reasonable person would or should know that he or she does not have the permission to do so from the owner or other person lawfully in possession of such facility. Nothing in this paragraph shall be construed to prohibit the lawful vending of goods and services within such areas.

(A) Definitions. For purposes of this section:

(i) "Bank" means any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, or other banking institution organized or operated under the laws of the United States, and any bank the deposits of which are insured by the Federal Deposit Insurance Corporation.

(ii) "Savings and loan association" means any federal savings and loan association and any "insured institution" as defined in Section 401 of the National Housing Act, as amended, and any federal credit union as defined in Section 2 of the Federal Credit Union Act.

(iii) "Credit union" means any federal credit union and any state-chartered credit union the accounts of which are

insured by the Administrator of the National Credit Union Administration.

(iv) "Check cashing business" means any person duly licensed as a check seller, bill payer, or prorater pursuant to Division 3 of the California Financial Code, commencing with section 12000.

(v) "Automated teller machine" shall mean any electronic information processing device which accepts or dispenses cash in connection with a credit, deposit, or convenience account.

(vi) "Automated teller machine facility" shall mean the area comprised of one or more automated teller machines, and any adjacent space which is made available to banking customers after regular banking hours.

(B) Exemptions. The provisions of subdivision (c)(1) shall not apply to any unenclosed automated teller machine located within any building, structure or space whose primary purpose or function is unrelated to banking activities, including but not limited to supermarkets, airports and school buildings, provided that such automated teller machine shall be available for use only during the regular hours of operation of the building, structure or space in which such machine is located.

(2) Motor vehicles and parking lots.

(A) Motor vehicles. No person shall approach an operator or occupant of a motor vehicle for the purpose of soliciting, asking or begging while such vehicle is located in any public place.

(B) Parking lots. No person shall solicit, ask or beg in any public parking lot or structure any time after dark. "After dark" means any time from one-half hour after sunset to one-half hour before sunrise.

(C) Exemptions. Subdivision (c)(2) shall not apply to any of the following:

(i) to solicitations related to business which is being conducted on the subject premises by the owner or lawful tenants;

(ii) to solicitations related to the lawful towing of a vehicle; or

(iii) to solicitations related to emergency repairs requested by the operator or other occupant of a vehicle.

(3) Public transportation vehicles and stops.

(A) "Public transportation vehicle" shall mean any vehicle, including a trailer bus, designed, used or maintained for carrying 10 or more persons, including the driver; or a passenger vehicle designed for carrying fewer than 10 persons, including the driver, and used to carry passengers for hire.

(B) Any person who solicits, asks or begs in any public transportation vehicle, or within ten feet of any designated or posted public transportation vehicle stop, is guilty of a violation of this section if:

(i) He or she remains there after being asked to leave by the owner, driver, or operator of a public transportation vehicle; the agent of the owner, driver or operator of a public transportation vehicle; the owner or manager of a public transportation facility; the agent of the owner or manager of a public transportation facility; a member of a security force employed by the public transportation facility; or by a peace officer, as defined in Chapter 4.5 of Title 3 of the California Penal Code (commencing with Pen.Code, § 830); or

(ii) Within the immediately preceding 30 days, he or she engaged in a solicitation at that location and had been asked to leave by a person specified in subdivision (c)(3)(B)(i), above.

(iii) Subdivision (c)(3)(B)(ii) is not violated if a person who has been requested to leave enters the property within the designated period and solicits, asks, or begs with the express authorization of a person specified in subdivision (c)(3)(B)(i).

(4) Restaurants. Any person who solicits, asks, or begs in any outdoor or indoor dining area of a restaurant or other establishment serving food for immediate consumption is guilty of a violation of this section if:

(A) He or she remains there after being asked to leave by the owner, manager or supervisor of the restaurant or other food establishment; the agent of the owner, manager or supervisor of the restaurant; a member of a security force employed by the restaurant; or by a peace officer, as defined in Chapter 4.5 of Title 3 of the California Penal Code (commencing with Pen.Code, § 830), acting at the request of any of the persons specified in this subdivision; or

(B) Within the immediately preceding 30 days, he or she engaged in a solicitation at that location and had been asked to leave by a person specified in subdivision (c)(4)(A), above.

(C) Subdivision (c)(4)(B) is not violated if a person who has been requested to leave enters the property within the designated period and solicits asks, or begs with the express authorization of a person specified in subdivision (c)(4)(A).

(d) **Penalty.** A violation of this Section is punishable as a misdemeanor or infraction, chargeable at the City Attorney's discretion.

(e) **Severability.** The provisions of this ordinance are declared to be separate and severable. The invalidity of any clause, sentence, paragraph, subdivision, section or portion of this ordinance, or the invalidity of the application thereof to any person or circumstance shall not affect the validity of the remainder of this ordinance, or the validity of its application to other persons or circumstances.

(f) **Non-exclusivity.** Nothing in this chapter shall limit or preclude the enforcement of other applicable laws.

Sec. 2. The City Clerk shall certify to the passage of this ordinance and cause the same to be published in some daily newspaper printed and published in the City of Los Angeles.

I hereby certify that the foregoing ordinance was introduced at the meeting of the Council of the City of Los Angeles JUN 2 5 1997 and was passed at its meeting of JUL 0 2 1997

J. MICHAEL CAREY, City Clerk

By _____
Deputy

Approved ____ JUL 1 5 1997 ____

Mayor

Approved as to Form and Legality

James K. Hahn, City Attorney

By _____ JUL 7 1997
EARL E. THOMAS.
Assistant City Attorney

File No. 96-0146, S1